Kenneth M. Jones, Esq.
CA Bar No. 140358
Kenneth_jones@gshllp.com
JoAnn Victor, Esq.
CA Bar No. 121891
Joann_victor@gshllp.com
**Gonzalez Saggio & Harlan LLP**
3699 Wilshire Boulevard, Suite 890
Los Angeles, California 90010
Telephone: (213) 487-1400
Facsimile: (213) 487-1402

Attorneys for Plaintiff PRINCIPAL LIFE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

PRINCIPAL LIFE INSURANCE
COMPANY,

              Plaintiff,

      v.

KEVIN McBARRON,

              Defendants.

CASE NO.: **'13CV1063 L    JMA**

**COMPLAINT FOR RESCISSION
AND FRAUD IN THE INDUCEMENT**

    Plaintiff, Principal Life Insurance Company ("Principal Life"), for its Complaint for Rescission and Fraud in the Inducement against Defendant, Kevin McBarron ("McBarron"), states:

### JURISDICTIONAL ALLEGATIONS

    1.      Principal Life is an Iowa company with its principal place of business in Des Moines, Iowa and, as such, is a citizen of the state of Iowa. Principal Life

is authorized to conduct and is conducting business as an insurer in the state of California.

2.      Upon information and belief, McBarron, formerly a citizen of Indiana, is now a citizen of the state of California, residing in San Diego County.

**3.**      The Court has original jurisdiction of this action pursuant to 28 U.S.C. § 332 in that it is a civil action between citizens of different states and the amount in controversy is in excess of $75,000.00, as this case involves the validity of the underwritten portion of Disability Income Insurance Policy No. 7725110 (the "Policy"), and the benefits at issue have a face value in excess of $75,000.00. A copy of the Policy is **Exhibit 1.**

4.      Venue is proper pursuant to 28 U.S.C. § 1391, because McBarron resides in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### McBarron's Application for the Policy

5.      McBarron applied to Principal Life for $6,000.00 per month in disability insurance and qualified for guaranteed standard issue coverage in the amount of $4,000.00 per month, for which no underwriting was required.

6.      The benefit amount in excess of the guaranteed issue amount -- $2,000.00 per month -- was subject to underwriting by Principal Life. As such, McBarron was required to complete an application for the $2,000.00 per month

disability insurance he sought in excess of the guaranteed issue amount of $4,000.00.

7.       On or about March 5, 2010, McBarron completed an application ("the Application"), for disability insurance with Principal Life.

8.       As part of the application, McBarron completed a medical questionnaire on April 16, 2010. A copy of the Application is Exhibit 2.[1]

9.       McBarron completed the Application in Indiana.

10.      The Application contains the confidential medical information of McBarron. Principal Life will provide that to counsel for McBarron upon appearance and confer with counsel for McBarron concerning the filing of a motion seeking permission to file unredacted copies of the Application and medical information relevant to the allegations in the Complaint under seal.

11.      McBarron was asked certain medical questions in the Application.

12.      In responding to the questions on the Application, McBarron knowingly made false statements of material fact or concealed statements of material fact.

13.      The particular medical questions and answers are not being disclosed in this Complaint to protect McBarron from the disclosure of confidential medical information, and will be included in the information filed under seal if the Court grants the motion to seal as forth in paragraph 7.

---

[1] The application is redacted to remove the confidential medical information of McBarron.

*14.*    McBarron signed Part C of the Application on March 5, 2010. */d.*

15.    In signing Part C of the application, McBarron acknowledged and agreed:

**AGREEMENT: Statements In Application:** I represent that all statements in this application(s) are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that the statements in this application(s), including all of its parts, and statements by the Proposed Insured in any medical questionnaire(s) that becomes a part of this application(s), will be the basis of any insurance issued. I understand that misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Insurance Effective:** I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application(s) has been received and accepted by the owner and the first premium paid; and (2) at the time of such receipt and payment, the person to be insured is actually in the state of health and insurability represented in this application(s), medical questionnaire(s), or amendment(S) that becomes a part of this application(s); and (3) the Part D of the completed Tele-App interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy.

**Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on this application(s) and on any medical questionnaire(s) that becomes a part of this application(s) may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in the application(s).

16.          In signing Part D of the Application on July 7, 2010, McBarron

acknowledged and agreed:

> **Statements In Application:** I have read all the questions and answers obtained during the telephone application interview. This includes Part **B** on the Proposed Insured. I represent that all statements are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I have also signed a copy of this Agreement/Acknowledgment of Delivery included with my policy. I understand and agree that the statements in the application, including all of its parts, and statements by the Proposed Insured in any medical questionnaire(s) that becomes a part of this application, will be the basis for and form a part of the policy. I understand that misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

> **When Insurance Effective:** I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application has been received and accepted by the owner and the first premium paid; and (2) at the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in the application(s), medical questionnaire(s), or amendment(s) that becomes a part of the application; and (3) the Part D of the completed Tele-App interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are met, the policy will then be deemed effective on the Policy Date stated in the policy.

> **Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on the application(s) and on any medical questionnaire(s) that becomes a part of this application may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in the application.

**Insurability Dates:** If a premium deposit was submitted with Part A and C of the application, I verify that the information in Part B of the application truly reflects the Proposed Insured's health or insurability as of 4/16/2010, the date the telephone application interview was completed. I further verify that the answers in Part A and B of the application are true and correct as of the date hereof, and there has been no change in the Proposed Insured's health or insurability as of the date I sign Part D of this application. No change in insurability will be taken into consideration between the Start Date and Stop Date as defined in the Conditional Receipt.

If the application was submitted on a C.O.D. (Cash on Delivery-no premium deposit) basis, I verify that the information in Part A and B of the application truly reflects the Proposed Insured's health or insurability as of the date I sign Part D of this application.

17.      McBarron signed the Backdating Request form on July 7, 2010, in which he agreed that:

> ❖ I request that the policy date of my policy be backdated to April(month) 21 (day) 10 (year).
>
> ❖ I am making this request for this policy date in order to:
>
> > ❑ Buy this policy at a lower insurance age, allowing me to potentially lower my long term cost of purchasing this policy.
>
> I understand that requesting this policy date for my policy will result in payment of premiums by me for the period between the policy date requested above and the date I pay the first premium and take delivery of the policy (even though if the insured had died during this period, benefits would not have been due).
>
> I further understand that interim coverage is available through the conditional receipt if (at the time of application for this policy) I pay premiums which put coverage in force under the terms of the Conditional Receipt give to me from that application.
>
> In addition, I understand that the amount of premiums paid for which there is no coverage will depend on how long it takes to approve, issue, deliver the policy, and pay the first premium.

Therefore, I should take delivery as soon as possible and should respond to any requests for further underwriting information (or other delivery requirements) as promptly as possible.

The benefits of dating the policy in this manner have been explained to me by my representative. However, I understand I have the right at time of policy delivery to reject this backdated policy and receive a re-dated policy should I so choose. Coverage will go into effect immediately while the policy is re-dated provided I have made payment to the Company of the appropriate full mode premium.

18.    Notwithstanding the above acknowledgements by McBarron, the answers given by McBarron to certain questions in the Application were false.

19.    When McBarron signed the Application, he knew that his answers to those questions in the Application were false.

20.    When McBarron signed the Application, he intended that Principal Life would rely to its detriment on his false answers.

21.    Principal Life justifiably relied on the false representations by McBarron in the Application.

22.    McBarron's false statements of fact or the concealed facts materially affected either the acceptance of the risk or the hazard assumed by Principal Life.

23.    Principal Life was unaware of the false statements of material fact or concealment of material facts and is not chargeable with knowledge of the facts misrepresented by McBarron.

## **Principal Life Issued The Policy to McBarron**

**24.** Relying upon the fraudulent representations made by McBarron in the Application and Request to Backdate, Principal Life issued the Policy effective April 21, 2010. **Exhibit 1.**

**25.** The Policy was issued and delivered in Indiana.

The face page of the Policy contains the following provision:

**30 DAY EXAMINATION OFFER**
It is important to Us that the Owner is satisfied with this policy and that it meets the Owner's insurance goals. If the Owner is not satisfied with this policy for any reason, the policy may be returned to either the producer or Our Home Office within thirty days after the Owner has received the policy. We will refund any premiums paid and the policy will be considered void from its inception. **PLEASE READ THE POLICY CAREFULLY.**

 **IMPORTANT NOTICE**
Please review the copy of the application attached to this policy. The application is part of the policy. The policy was issued on the basis that the answers to all the questions and the information shown on the application are correct and complete. Material misstatements or omissions on the application could void the policy. If You would like to present an inquiry, obtain information about coverage or need assistance in resolving a complaint, or If any information on the application is not correct or is omitted, please call or write Principal Life Insurance Company, Individual Disability Insurance, 711 High Street, Des Moines, Iowa 50392-0001, 1(800) 247-9988.

**26.** The Policy contains an "incontestability" provision which states:

**Time Limit on Certain Defenses**

In issuing the coverage(s) under this policy and any attached riders, We have relied on the statements and representations on the application. We have the right to void the coverage(s) due to a material misstatement or omission in the application. However, after two years from the effective date of coverage(s), no material

misstatements or omissions, except fraudulent statements or omissions, made by You or the Owner in an application will be used to void the coverage(s).

Applications include, but are not limited to, the initial application(s), applications for reinstatement, benefit update, automatic increase option, and any underwritten adjustment.

No claim for Disability or loss covered by this policy or any attached riders starting after two years from the date coverage has been in effect will be reduced or denied because Sickness or Injury existed before the effective date of coverage(s) unless the condition is excluded by name or description. Sickness or Injury fully disclosed on the application(s) will be covered, unless excluded by name or description.

**27.**     The Policy also provides that Principal Life may void the Policy

upon

a finding of fraud, stating: **FRAUD**

Upon a judicial decision in a civil or criminal court that You and/or the Owner have committed fraud in obtaining this policy or the filing of a claim under this policy, We may void this policy.

**Principal Life Discovered McBarron's Fraudulent
Misrepresentations or Omissions in the Application**

28.     On or about September 18, 2012, McBarron submitted a claim for benefits under the Policy, claiming to be partially disabled as of June 1, 2012 and totally disabled as of November 1, 2012 due to the medical conditions set forth in the records to be submitted with the Motion to Seal.

29.     In determining McBarron's eligibility for benefits under the Policy, Principal Life obtained McBarron's medical records.

30.     McBarron's medical records revealed that McBarron had medical condition(s) that he did not disclose in the Application.

31.     McBarron's failure to disclose his history of medical condition(s) in the Application was a knowing false statement of past or existing material facts or concealment of such facts.

32.     McBarron knew that the representations in the Application were false at the time he made them.

33.     In making the representations in the Application, McBarron intended to deceive Principal Life.

34.     Principal Life relied on McBarron's false representations in the Application.

35.     Principal Life was unaware of McBarron's false statement of material fact or concealment of material fact and is not chargeable with knowledge of those facts.

36.     The false statement of fact or the concealed fact materially affected Principal Life's acceptance of the risk or the hazard assumed in that Principal Life would not have approved McBarron's coverage under the underwritten portion of the Policy, if McBarron had disclosed this material information, or if the true facts had been made known to Principal Life by McBarron prior to or at the time of the approval of coverage under the Policy.

37.     Principal Life has been damaged by McBarron's false statements in the Application.

38.     On or about May 3, 2013, Principal Life advised McBarron that he was not eligible for benefits under the underwritten portion of the Policy. The May 3, 2013 letter that Principal Life sent to McBarron contains the confidential medical information of McBarron. As previously set forth in Paragraph 10, Principal Life will be filing a motion seeking permission to file a copy of the May 3, 2013 letter under seal.

39.     On or about May 3, 2013, Principal Life advised McBarron that it was taking legal action to rescind the underwritten portion of the Policy because of the fraudulent misstatements or omissions about McBarron's medical history.

40.     Principal Life has satisfied all conditions precedent to the filing of this action.

<u>COUNT I</u>
<u>RESCISSION</u>

41.     Principal Life incorporates in Count **I** the allegations in paragraphs 1 through 40 of this Complaint.

**42.**     The Policy states that Principal Life relies on the statements and representations on the Application in issuing the underwritten coverage under the Policy, and that Principal Life has the right to void the underwritten coverage upon a judicial decision that McBarron committed fraud in obtaining the Policy or the filing of a claim under the Policy. **Exhibit 1.**

*43.*     Further, the Policy allows Principal Life to rescind the Policy or deny any claim at any time upon a judicial decision that McBarron committed fraud in obtaining the underwritten portion of the Policy or the filing of a claim under the Policy. *Id.*

44.     McBarron fraudulently misrepresented his medical condition(s) on the Application, and Principal Life relied on the misrepresentations.

45.     The information that McBarron omitted and/or misrepresented on the Application was material to the risk undertaken by Principal Life in issuing the Policy. If McBarron had disclosed this material information, or if the true facts had been made known to Principal Life by McBarron prior to or at the time of the issuance of the Policy, the Policy would not have been issued with a benefit amount in excess of $4,000.00 per month.

46.     As a result of McBarron's fraudulent misrepresentations and/or omissions as to his medical history on the Application, and upon a finding of fraud by the finder of fact, the Policy's benefit amount above the guaranteed standard issue amount is void *ab initio* and, of no force or effect since its inception, and Principal Life never has nor ever could become liable to McBarron under the Policy for the amount over the guaranteed standard issue amount.

## COUNT II
## FRAUD IN THE INDUCEMENT

47.     Principal Life incorporates in Count II the allegations in paragraphs 1 through 40 of this Complaint.

48.     McBarron made false and fraudulent statements in the Application regarding a past or existing material fact, i.e. his medical condition(s).

49.     McBarron knew that his statements in the Application regarding his medical condition(s) were false when he completed and signed the Application.

50.     In making the false statements, McBarron intended to deceive Principal Life.

51.     Principal Life justifiably relied on the false statements of McBarron in the Application.

52.     The false statements made by McBarron were material to the decision of Principal Life to issue the Policy to McBarron.

53.     McBarron intended that his false statements in the Application would induce Principal Life to act and issue the underwritten portion of the Policy to McBarron.

54.     Principal Life relied to its detriment on the false and fraudulent statements in the Application regarding McBarron's medical condition(s), as Principal Life would not have issued the underwritten portion of the Policy to McBarron as written, if McBarron had disclosed this material information, or if the true facts had been made known to Principal Life by McBarron prior to or at the time of the issuance of the Policy.

55.     Principal Life has suffered damages as a result of McBarron's fraudulent statements. Specifically, because the Policy benefit amount in excess

of $4,000.00 per month is void from its inception, and Principal Life never became liable to McBarron for such benefits under the Policy.

## **RELIEF REQUESTED**

Principal Life asks: (i) on Count I, that it have judgment entered in its favor and against McBarron, that the Policy's benefits in excess of the $4,000.00 guaranteed issue amount be canceled and rescinded *ab initio;* (ii) on Count II, that the Court render a decision that McBarron committed fraud in obtaining the underwritten portion of the Policy; and (iii) for such other relief as this Court deems appropriate under the facts and circumstances of this case.

May 3, 2013

Respectfully submitted,

By:  s/ JOANN VICTOR
JoAnn Victor, Esq.
CA Bar No. 121891
**GONZALEZ SAGGIO & HARLAN LLP**
3699 Wilshire Boulevard, Suite 890
Los Angeles, California 90010
Telephone: (213) 487-1400
Facsimile: (213) 487-1402

1   is authorized to conduct and is conducting business as an insurer in the state of

2   California.

3       2.      Upon information and belief, McBarron, formerly a citizen of

4

5   Indiana, is now a citizen of the state of California, residing in San Diego County.

6       3.      The Court has original jurisdiction of this action pursuant to 28

7   U.S.C. § 332 in that it is a civil action between citizens of different states and the

8

9   amount in controversy is in excess of $75,000.00, as this case involves the validity

10  of the underwritten portion of Disability Income Insurance Policy No. 7725110

11  (the "Policy"), and the benefits at issue have a face value in excess of $75,000.00.

12

13  A copy of the Policy is **Exhibit 1.**

14      4.      Venue is proper pursuant to 28 U.S.C. § 1391, because McBarron

15  resides in this District.

16

17  **<u>FACTUAL ALLEGATIONS COMMON TO ALL COUNTS</u>**

18  **<u>McBarron's Application for the Policy</u>**

19

20      5.      McBarron applied to Principal Life for $6,000.00 per month in

21  disability insurance and qualified for guaranteed standard issue coverage in the

22

23  amount of $4,000.00 per month, for which no underwriting was required.

24      6.      The benefit amount in excess of the guaranteed issue amount --

25  $2,000.00 per month -- was subject to underwriting by Principal Life.  As such,

26

27  McBarron was required to complete an application for the $2,000.00 per month

28

disability insurance he sought in excess of the guaranteed issue amount of $4,000.00.

7.      On or about March 5, 2010, McBarron completed an application ("the Application"), for disability insurance with Principal Life.

8.      As part of the application, McBarron completed a medical questionnaire on April 16, 2010.  A copy of the Application is **Exhibit 2**.[1]

9.      McBarron completed the Application in Indiana.

10.     The Application contains the confidential medical information of McBarron.   Principal Life will provide that to counsel for McBarron upon appearance and confer with counsel for McBarron concerning the filing of a motion seeking permission to file unredacted copies of the Application and medical information relevant to the allegations in the Complaint under seal.

11.     McBarron was asked certain medical questions in the Application.

12.     In responding to the questions on the Application, McBarron knowingly made false statements of material fact or concealed statements of material fact.

13.     The particular medical questions and answers are not being disclosed in this Complaint to protect McBarron from the disclosure of confidential medical information, and will be included in the information filed under seal if the Court grants the motion to seal as forth in paragraph 7.

---

[1] The application is redacted to remove the confidential medical information of McBarron.

14.     McBarron signed Part C of the Application on March 5, 2010. *Id.*

15.     In signing Part C of the application, McBarron acknowledged and agreed:

**AGREEMENT: Statements In Application:** I represent that all statements in this application(s) are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that the statements in this application(s), including all of its parts, and statements by the Proposed Insured in any medical questionnaire(s) that becomes a part of this application(s), will be the basis of any insurance issued. I understand that misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Insurance Effective:** I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application(s) has been received and accepted by the owner and the first premium paid; and (2) at the time of such receipt and payment, the person to be insured is actually in the state of health and insurability represented in this application(s), medical questionnaire(s), or amendment(S) that becomes a part of this application(s); and (3) the Part D of the completed Tele-App interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy.

**Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on this application(s) and on any medical questionnaire(s) that becomes a part of this application(s) may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in the application(s).

16.     In signing Part D of the Application on July 7, 2010, McBarron acknowledged and agreed:

**Statements In Application:** I have read all the questions and answers obtained during the telephone application interview. This includes Part B on the Proposed Insured. I represent that all statements are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I have also signed a copy of this Agreement/Acknowledgment of Delivery included with my policy. I understand and agree that the statements in the application, including all of its parts, and statements by the Proposed Insured in any medical questionnaire(s) that becomes a part of this application, will be the basis for and form a part of the policy. I understand that misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Insurance Effective:** I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application has been received and accepted by the owner and the first premium paid; and (2) at the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in the application(s), medical questionnaire(s), or amendment(s) that becomes a part of the application; and (3) the Part D of the completed Tele-App interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are met, the policy will then be deemed effective on the Policy Date stated in the policy.

**Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on the application(s) and on any medical questionnaire(s) that becomes a part of this application may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in the application.

**Insurability Dates:** If a premium deposit was submitted with Part A and C of the application, I verify that the information in Part B of the application truly reflects the Proposed Insured's health or insurability as of 4/16/2010, the date the telephone application interview was completed. I further verify that the answers in Part A and B of the application are true and correct as of the date hereof, and there has been no change in the Proposed Insured's health or insurability as of the date I sign Part D of this application. No change in insurability will be taken into consideration between the Start Date and Stop Date as defined in the Conditional Receipt.

If the application was submitted on a C.O.D. (Cash on Delivery-no premium deposit) basis, I verify that the information in Part A and B of the application truly reflects the Proposed Insured's health or insurability as of the date I sign Part D of this application.

17.    McBarron signed the Backdating Request form on July 7, 2010, in which he agreed that:

> ❖ I request that the policy date of my policy be backdated to April(month) 21 (day) 10 (year).
>
> ❖ I am making this request for this policy date in order to:
>
>> ☐ Buy this policy at a lower insurance age, allowing me to potentially lower my long term cost of purchasing this policy.
>
> I understand that requesting this policy date for my policy will result in payment of premiums by me for the period between the policy date requested above and the date I pay the first premium and take delivery of the policy (even though if the insured had died during this period, benefits would not have been due).
>
> I further understand that interim coverage is available through the conditional receipt if (at the time of application for this policy) I pay premiums which put coverage in force under the terms of the Conditional Receipt give to me from that application.
>
> In addition, I understand that the amount of premiums paid for which there is no coverage will depend on how long it takes to approve, issue, deliver the policy, and pay the first premium.

Therefore, I should take delivery as soon as possible and should respond to any requests for further underwriting information (or other delivery requirements) as promptly as possible.

The benefits of dating the policy in this manner have been explained to me by my representative. However, I understand I have the right at time of policy delivery to reject this backdated policy and receive a re-dated policy should I so choose. Coverage will go into effect immediately while the policy is re-dated provided I have made payment to the Company of the appropriate full mode premium.

18.     Notwithstanding the above acknowledgements by McBarron, the answers given by McBarron to certain questions in the Application were false.

19.     When McBarron signed the Application, he knew that his answers to those questions in the Application were false.

20.     When McBarron signed the Application, he intended that Principal Life would rely to its detriment on his false answers.

21.     Principal Life justifiably relied on the false representations by McBarron in the Application.

22.     McBarron's false statements of fact or the concealed facts materially affected either the acceptance of the risk or the hazard assumed by Principal Life.

23.     Principal Life was unaware of the false statements of material fact or concealment of material facts and is not chargeable with knowledge of the facts misrepresented by McBarron.

## Principal Life Issued The Policy to McBarron

24.     Relying upon the fraudulent representations made by McBarron in the Application and Request to Backdate, Principal Life issued the Policy effective April 21, 2010. **Exhibit 1.**

25.     The Policy was issued and delivered in Indiana.

The face page of the Policy contains the following provision:

**30 DAY EXAMINATION OFFER**
It is important to Us that the Owner is satisfied with this policy and that it meets the Owner's insurance goals. If the Owner is not satisfied with this policy for any reason, the policy may be returned to either the producer or Our Home Office within thirty days after the Owner has received the policy. We will refund any premiums paid and the policy will be considered void from its inception. **PLEASE READ THE POLICY CAREFULLY.**

**IMPORTANT NOTICE**
Please review the copy of the application attached to this policy. The application is part of the policy. The policy was issued on the basis that the answers to all the questions and the information shown on the application are correct and complete. Material misstatements or omissions on the application could void the policy. If You would like to present an inquiry, obtain information about coverage or need assistance in resolving a complaint, or If any information on the application is not correct or is omitted, please call or write Principal Life Insurance Company, Individual Disability Insurance, 711 High Street, Des Moines, Iowa 50392-0001, 1(800) 247-9988.

26.     The Policy contains an "incontestability" provision which states:

**Time Limit on Certain Defenses**

In issuing the coverage(s) under this policy and any attached riders, We have relied on the statements and representations on the application.  We have the right to void the coverage(s) due to a material misstatement or omission in the application.  However, after two years from the effective date of coverage(s), no material

misstatements or omissions, except fraudulent statements or omissions, made by You or the Owner in an application will be used to void the coverage(s).

Applications include, but are not limited to, the initial application(s), applications for reinstatement, benefit update, automatic increase option, and any underwritten adjustment.

No claim for Disability or loss covered by this policy or any attached riders starting after two years from the date coverage has been in effect will be reduced or denied because Sickness or Injury existed before the effective date of coverage(s) unless the condition is excluded by name or description. Sickness or Injury fully disclosed on the application(s) will be covered, unless excluded by name or description.

27.     The Policy also provides that Principal Life may void the Policy upon a finding of fraud, stating:

**FRAUD**

Upon a judicial decision in a civil or criminal court that You and/or the Owner have committed fraud in obtaining this policy or the filing of a claim under this policy, We may void this policy.

### Principal Life Discovered McBarron's Fraudulent Misrepresentations or Omissions in the Application

28.     On or about September 18, 2012, McBarron submitted a claim for benefits under the Policy, claiming to be partially disabled as of June 1, 2012 and totally disabled as of November 1, 2012 due to the medical conditions set forth in the records to be submitted with the Motion to Seal.

29.     In determining McBarron's eligibility for benefits under the Policy, Principal Life obtained McBarron's medical records.

30.     McBarron's medical records revealed that McBarron had medical condition(s) that he did not disclose in the Application.

31.     McBarron's failure to disclose his history of medical condition(s) in the Application was a knowing false statement of past or existing material facts or concealment of such facts.

32.     McBarron knew that the representations in the Application were false at the time he made them.

33.     In making the representations in the Application, McBarron intended to deceive Principal Life.

34.     Principal Life relied on McBarron's false representations in the Application.

35.     Principal Life was unaware of McBarron's false statement of material fact or concealment of material fact and is not chargeable with knowledge of those facts.

36.     The false statement of fact or the concealed fact materially affected Principal Life's acceptance of the risk or the hazard assumed in that Principal Life would not have approved McBarron's coverage under the underwritten portion of the Policy, if McBarron had disclosed this material information, or if the true facts had been made known to Principal Life by McBarron prior to or at the time of the approval of coverage under the Policy.

37.    Principal Life has been damaged by McBarron's false statements in the Application.

38.    On or about May 3, 2013, Principal Life advised McBarron that he was not eligible for benefits under the underwritten portion of the Policy.   The May 3, 2013 letter that Principal Life sent to McBarron contains the confidential medical information of McBarron.   As previously set forth in Paragraph 10, Principal Life will be filing a motion seeking permission to file a copy of the May 3, 2013 letter under seal.

39.    On or about May 3, 2013, Principal Life advised McBarron that it was taking legal action to rescind the underwritten portion of the Policy because of the fraudulent misstatements or omissions about McBarron's medical history.

40.    Principal Life has satisfied all conditions precedent to the filing of this action.

## COUNT I
## RESCISSION

41.    Principal Life incorporates in Count I the allegations in paragraphs 1 through 40 of this Complaint.

42.    The Policy states that Principal Life relies on the statements and representations on the Application in issuing the underwritten coverage under the Policy, and that Principal Life has the right to void the underwritten coverage upon a judicial decision that McBarron committed fraud in obtaining the Policy or the filing of a claim under the Policy.  **Exhibit 1**.

43.     Further, the Policy allows Principal Life to rescind the Policy or deny any claim at any time upon a judicial decision that McBarron committed fraud in obtaining the underwritten portion of the Policy or the filing of a claim under the Policy. *Id.*

44.     McBarron fraudulently misrepresented his medical condition(s) on the Application, and Principal Life relied on the misrepresentations.

45.     The information that McBarron omitted and/or misrepresented on the Application was material to the risk undertaken by Principal Life in issuing the Policy.  If McBarron had disclosed this material information, or if the true facts had been made known to Principal Life by McBarron prior to or at the time of the issuance of the Policy, the Policy would not have been issued with a benefit amount in excess of $4,000.00 per month.

46.     As a result of McBarron's fraudulent misrepresentations and/or omissions as to his medical history on the Application, and upon a finding of fraud by the finder of fact, the Policy's benefit amount above the guaranteed standard issue amount is void *ab initio* and, of no force or effect since its inception, and Principal Life never has nor ever could become liable to McBarron under the Policy for the amount over the guaranteed standard issue amount.

## COUNT II
## FRAUD IN THE INDUCEMENT

47.     Principal Life incorporates in Count II the allegations in paragraphs 1 through 40 of this Complaint.

48.     McBarron made false and fraudulent statements in the Application regarding a past or existing material fact, i.e. his medical condition(s).

49.     McBarron knew that his statements in the Application regarding his medical condition(s) were false when he completed and signed the Application.

50.     In making the false statements, McBarron intended to deceive Principal Life.

51.     Principal Life justifiably relied on the false statements of McBarron in the Application.

52.     The false statements made by McBarron were material to the decision of Principal Life to issue the Policy to McBarron.

53.     McBarron intended that his false statements in the Application would induce Principal Life to act and issue the underwritten portion of the Policy to McBarron.

54.     Principal Life relied to its detriment on the false and fraudulent statements in the Application regarding McBarron's medical condition(s), as Principal Life would not have issued the underwritten portion of the Policy to McBarron as written, if McBarron had disclosed this material information, or if the true facts had been made known to Principal Life by McBarron prior to or at the time of the issuance of the Policy.

55.     Principal Life has suffered damages as a result of McBarron's fraudulent statements.  Specifically, because the Policy benefit amount in excess

of $4,000.00 per month is void from its inception, and Principal Life never became liable to McBarron for such benefits under the Policy.

## RELIEF REQUESTED

Principal Life asks: (i) on County I, that it have judgment entered in its favor and against McBarron, that the Policy's benefits in excess of the $4,000.00 guaranteed issue amount be canceled and rescinded *ab initio*; (ii) on County II, that the Court render a decision that McBarron committed fraud in obtaining the underwritten portion of the Policy; and (iii) for such other relief as this Court deems appropriate under the facts and circumstances of this case.


Dated:   May 2, 2013                    **GONZALEZ SAGGIO & HARLAN LLP**


                                        */s/ Kenneth M. Jones*
                                        _____
                                    By:   Kenneth M. Jones, Esq.
                                          JoAnn Victor, Esq.
                                          Attorneys for Plaintiff
                                          PRINCIPAL LIFE INSURANCE COMPANY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

## INDIANA IMPORTANT NOTICE

**Questions regarding your policy or coverage should be directed to:**

**Principal Life Insurance Company**
**(800) 247-9988**

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you have been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or email:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline:  (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

PRINCIPAL LIFE/McBARRON
000001

SF 221-1

7725110

The Indiana Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent.  COVERAGE MAY NOT BE AVAILABLE FOR YOUR POLICY.  Even if coverage is provided, there are significant limits and exclusions.  Coverage is always conditioned on residence in this state.  Other conditions may also preclude coverage.

The Indiana Life and Health Insurance Guaranty Association will respond to any questions you may have which are not answered by this document.  Your insurer and agent are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy.

You should not rely on availability of coverage under the Indiana Life and Health Insurance Guaranty Association when selecting an insurer.

You may contact the Indiana Life and Health Insurance Guaranty Association as follows:

> Indiana Life and Health Insurance Guaranty Association
> 251 E. Ohio Street, Suite 1070
> Indianapolis, IN  46204
> (317) 636-8204
> www.inlifega.org
>
> You may contact the Indiana Department of Insurance as follows:

Indiana Department of Insurance
311 W. Washington Street
Indianapolis, IN  46204
(317) 232-2385
www.in.gov/idoi

SF 818

# DISABILITY INCOME POLICY

**NON-CANCELLABLE AND GUARANTEED RENEWABLE AT GUARANTEED PREMIUM RATES TO YOUR AGE 65 POLICY ANNIVERSARY OR FOR FIVE YEARS FROM THE POLICY DATE, IF LATER. CONDITIONALLY RENEWABLE THEREAFTER ON ANNUAL BASIS FOR LIFE, SUBJECT TO CHANGE IN PREMIUM RATES. IF THE SOCIAL INSURANCE SUBSTITUTE BENEFIT IS INCLUDED, IT IS CONTINUABLE AT GUARANTEED PREMIUM RATES TO THE EARLIER OF YOUR AGE 65 POLICY ANNIVERSARY OR UPON RECEIPT OF SOCIAL SECURITY RETIREMENT BENEFITS OR RAILROAD RETIREMENT BENEFITS. NONPARTICIPATING.**

Coverage under this policy starts at 12:01 a.m. on the Policy Date and will stay in force until 12:00 a.m. on Your Age 65 Policy Anniversary or after five years from the Policy Date, if later, as long as premiums are paid when due. If the conditions are met in the Conditional Renewal section, this policy may be renewed each year thereafter for life. While this policy is in force, We cannot:

1. Cancel it; or
2. Change the premium rate (before the Age 65 Policy Anniversary or five years from the Policy Date, if later).

This policy is a legal contract between the Owner and Us. The policy is issued in consideration of the application and payment of premiums. We will pay this policy's benefits due to Disability or qualifying loss resulting from Injury or Sickness subject to the definitions, exclusions and all other provisions of this policy. The Disability or qualified loss must begin while the policy is in force.

**30 DAY EXAMINATION OFFER**

It is important to Us that the Owner is satisfied with this policy and that it meets the Owner's insurance goals. If the Owner is not satisfied with this policy for any reason, the policy may be returned to either the producer or Our Home Office within thirty days after the Owner has received the policy. We will refund any premiums paid and the policy will be considered void from its inception. **PLEASE READ THE POLICY CAREFULLY.**

**IMPORTANT NOTICE**

Please review the copy of the application attached to this policy. The application is part of the policy. The policy was issued on the basis that the answers to all the questions and the information shown on the application are correct and complete. Material misstatements or omissions on the application could void the policy. If any information on the application is not correct or is omitted, please call or write Principal Life Insurance Company, Individual Disability Insurance, 711 High Street, Des Moines, Iowa 50392-0001, 1(800) 247-9988.

*Joyce N. Hoffman*
Senior Vice President
and Corporate Secretary

*Larry Zimpleman*
Chairman, President and CEO

**Principal**
*Financial Group*

Principal Life
Insurance Company

711 High Street
Des Moines, Iowa 50392-0001

INSURED          Kevin W Mc Barron

HH 750                                              7725110

# TABLE OF CONTENTS

**SUBJECT**                                                                                               **PAGE**

POLICY DEFINITIONS ............................................................................................................ 4

DISABILITY BENEFIT ............................................................................................................. 8

SOCIAL INSURANCE SUBSTITUTE BENEFIT ....................................................................... 8
ADDITIONAL PROOF OF LOSS FOR SOCIAL INSURANCE SUBSTITUTE BENEFIT ........ 9

OTHER BENEFITS ................................................................................................................ 10
TRANSPLANT SURGERY BENEFIT ..................................................................................... 10
DEATH BENEFIT ................................................................................................................... 10
REHABILITATION BENEFIT ................................................................................................. 10
WAIVER OF PREMIUM BENEFIT ......................................................................................... 11

EXCLUSIONS AND LIMITATIONS ....................................................................................... 11
EXCLUSIONS ........................................................................................................................ 11
LIMITATION WHEN OUTSIDE THE UNITED STATES OR CANADA .................................. 11
LIMITATION DUE TO NORMAL PREGNANCY OR CHILDBIRTH ...................................... 12
PRE-EXISTING CONDITION LIMITATION ........................................................................... 12
OTHER EXCLUSIONS AND LIMITATIONS .......................................................................... 12

CLAIM INFORMATION ......................................................................................................... 12
NOTICE OF CLAIM AND PROOF OF LOSS ........................................................................ 12
INDEPENDENT MEDICAL EXAMINATION .......................................................................... 14
CONTINUING BENEFITS ...................................................................................................... 14
PAYMENT OF A CLAIM ........................................................................................................ 14
OVERPAYMENT OF BENEFITS ........................................................................................... 14
LEGAL ACTION ..................................................................................................................... 14

PREMIUMS AND REINSTATEMENT .................................................................................... 15
PAYMENT OF PREMIUM ...................................................................................................... 15
GRACE PERIOD .................................................................................................................... 15
REFUND OF PREMIUMS ...................................................................................................... 15
REFUND AFTER DEATH ....................................................................................................... 15
TERMINATION ....................................................................................................................... 15
REINSTATEMENT .................................................................................................................. 16
SUSPENSION DURING MILITARY SERVICE ....................................................................... 16

CONDITIONAL RENEWAL ................................................................................................... 16

POLICY ADJUSTMENT OPTIONS ....................................................................................... 17

THE CONTRACT ................................................................................................................... 18
ENTIRE CONTRACT ............................................................................................................. 18
ALTERATIONS ...................................................................................................................... 18
TIME LIMIT ON CERTAIN DEFENSES ................................................................................. 18
FRAUD ................................................................................................................................... 18
MISSTATEMENT OF AGE ..................................................................................................... 18
CHANGE OF OWNER OR BENEFIT RECIPIENT ................................................................ 18
ASSIGNMENT ........................................................................................................................ 18

A copy of the application and any riders are attached to the back of this policy.

HH 750

PRINCIPAL LIFE/McBARRON
000004

7725110

 **Principal** Financial Group

**Principal Life
Insurance Company
Des Moines, Iowa 50392-0001**

# DATA PAGE

## Disability Income Insurance

### POLICY INFORMATION

| | |
|---|---|
| **Policy Number:** | 7725110 |
| **Owner(s):** | Kevin W Mc Barron |
| **Insured's Name:** | Kevin W Mc Barron |
| **Insured's Age and Gender Class:** | 49 - Unisex |
| **Policy Date:** | April 21, 2010 |

| | **Elimination Period** | **Maximum Monthly Benefit** |
|---|---|---|
| **Disability Benefit:** | 90 Days | $6,500 |

**Social Insurance Substitute Benefit: Not Included**

**Maximum Benefit Period
  for the Disability Benefit:**     To Age 65 Policy Anniversary *

| ***If Insured's Disability begins:*** | **Then the Maximum Benefit Period is:** |
|---|---|
| Prior to Age 61 Policy Anniversary | To Age 65 Policy Anniversary |
| On or After Age 61 Policy Anniversary but prior to Age 62 Policy Anniversary | 48 Months |
| On or After Age 62 Policy Anniversary but prior to Age 63 Policy Anniversary | 42 Months |
| On or After Age 63 Policy Anniversary but prior to Age 64 Policy Anniversary | 36 Months |
| On or After Age 64 Policy Anniversary but prior to Age 65 Policy Anniversary | 30 Months |
| On or after Age 65 Policy Anniversary | No benefits are payable, unless renewed as described below |

**Your Occupation Period is:**     To Age 65 Policy Anniversary

If this policy is renewed as described in the Conditional Renewal section, the Maximum Benefit Period is 2 years and the Your Occupation Period is 2 years.

**The Death Benefit is:**     $19,500

Also see the Exclusions and Limitations section of the policy.

PRINCIPAL LIFE/MCBARRON
000005

## RIDER INFORMATION

**HH751**        **Capital Sum Benefit Rider**

   **Effective Date:**        April 21, 2010

- Capital Sum Benefit:        $78,000

**HH755**        **Presumptive Disability Benefit Rider**

   **Effective Date:**        April 21, 2010

**HH788**        **Future Benefit Increase Rider**

   **Effective Date:**        April 21, 2010
   **Option Date:**        April 21, 2010

- Minimum Index Percent: 4% rounded up to the next $25 increment
- Maximum Index Percent: 10%

**HH776**        **Supplemental Health Benefit Rider**

   **Effective Date:**        April 21, 2010
   **Termination Date:**        To Insured's Attained Age 65

- Supplemental Health Benefit Amount:        $39,000

**HH784**        **Residual Disability and Recovery Benefit Rider**

   **Effective Date:**        April 21, 2010

PRINCIPAL LIFE/MCBARRON
000006

## PREMIUM INFORMATION

**POLICY**

| | |
|---|---|
| Disability Benefit: | $3,676.91 |

**RIDERS**

| | |
|---|---|
| Capital Sum Benefit: | $0.00 |
| Presumptive Disability Benefit: | $0.00 |
| Future Benefit Increase Rider: | $0.00 |
| Supplemental Health Benefit Rider: | $0.00 |
| Residual Disability and Recovery Benefit Rider: | $750.77 |

| | |
|---|---|
| **Total Annual Premium Before Discount:** | $4,427.68 |
| Multi-Life Discount – 25% | |
| Total Discount – 25.0% | –   $1,106.92 |
| **Total Annual Premium After Discount:** | $3,320.76 |

| PREMIUM PAYMENT FREQUENCY OPTIONS | Premium | Annualized Premium | Premium Payment Frequency Charge Included* |
|---|---|---|---|
| **Total Annual Premium After Discount:** | $3,320.76 | $3,320.76 | $0.00 |
| Semi-Annual Premium After Discount: | $1,702.00 | $3,404.00 | $83.24 |
| Quarterly Premium After Discount: | $871.81 | $3,487.24 | $166.48 |
| PAW/EFT/Monthly Premium After Discount: | $290.46 | $3,485.52 | $164.76 |

**\*There is an additional charge for premium payment frequencies other than annual.**

Renewal of coverage as described in the Conditional Renewal section may require an increase in the renewal premium. Please refer to this section in the policy for details.

If you have any questions, call your financial representative.  To file a claim, call our Home Office at 1-800-422-3786.

This Data Page Prepared On:  September 21, 2012

PRINCIPAL LIFE/McBARRON
000007

HH750      -2                                3-2                                7725110

## POLICY DEFINITIONS

The following defined terms and phrases are capitalized throughout the policy.   Please read them carefully as they will help You understand the policy provisions.

ADJUSTMENT DATE -- means the effective date of a change in coverage made to the policy.  The most recent Adjustment Date, if any, is shown on the Data Page.

AGE POLICY ANNIVERSARY -- means the Policy Anniversary on or next following Your birthday.  For example, if the Policy Date is June 5, 2010, and You are 45 years old on April 3, 2030, the Age 45 Policy Anniversary is June 5, 2030.

BENEFIT RECIPIENT -- means the person or entity named as the Benefit Recipient in the application or a later written request to change the Benefit Recipient which is approved by Us.  The term includes any lawful successors of the Benefit Recipient.  Unless otherwise stated in this policy or attached riders, benefits will be paid to the Benefit Recipient.  If no Benefit Recipient is named in the application or other written request then the Owner is the Benefit Recipient.

CONTINUOUS DISABILITY -- means Your Disability that continues with no interruption.  You will also be considered Continuously Disabled if an interrupted Elimination Period or Recurring Disability occurs.  It is also considered one Continuous Disability if You are Disabled from one condition and, while still Disabled from that condition, incur another condition that causes Disability.

DISABILITY/DISABLED -- means, when used alone, Total Disability.  If either the Residual Disability Benefit Rider or the Short Term Residual Disability Benefit Rider is attached to Your policy, Disability also means Residual Disability.  If a Disability is caused by more than one Injury or Sickness, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

DOCTOR -- means a Medical Doctor (MD), Doctor of Osteopathy (DO) or Doctor of Chiropractic (DC) who is licensed by law, and is acting within the scope of their license, to treat an Injury or Sickness. If the Disability is due to a disease or disorder classified in the most current Diagnostic and Statistical Manual of Mental/Nervous Disorders (DSM) published by the American Psychiatric Association or its successor, the person must be a board-certified psychiatrist or a licensed doctoral level psychologist. The person cannot be You, any person related to You by blood or marriage, the Owner, the Benefit Recipient, a business or professional partner or associate, or any person who has a financial affiliation or business interest with You or Your spouse.

EARNINGS -- means:

If You are an employee with no ownership interest in a business entity, Earnings include the amounts as reported for Federal Income Tax purposes of:

1.  Your salary, wages, fees, draw, commissions, bonuses; PLUS

2.  Any other income or compensation You earn; PLUS

3.  Amounts You earned which would have resulted in current taxable employee compensation but instead were contributed by You to a benefit plan (e.g. Flexible Spending Accounts, etc.), or qualified tax-deferred retirement plan (e.g. 401 (k), 403 (b), 457, etc.); LESS

4.  Unreimbursed employee business expenses.

HH 750                                      4                              7725110

PRINCIPAL LIFE/MCBARRON
000008

If You are a business owner, such as: an owner of a sole proprietorship, a partner in a partnership, a shareholder of a corporation or subchapter S-corporation, or a member of a limited liability company or limited liability partnership; and You perform the duties or activities of Your Occupation or another occupation within the scope of a legal business entity, Earnings include the amounts as reported for Federal Income Tax purposes of:

1. Your share (based on ownership or contractual agreement) of the gross revenue or income earned by all such business entities including income earned by You and others under Your supervision or direction; LESS

2. Your share (based on ownership or contractual agreement) of the usual and customary unreimbursed business expenses of those entities which are incurred on a regular basis, are essential to the established business operation of the entity, are deductible for Federal Income Tax purposes, and do not exceed expenses before Disability began. Such expenses do not include salaries, benefits, and other forms of compensation which are payable to You, or to any person related by blood or marriage to You unless such person was a full-time employee of such business working at least 30 hours per week for at least 60 days prior to the start of Your period of Disability; PLUS

3. Any contributions to a pension or profit sharing plan made on Your behalf by all such business entities and not waived by contract during Disability.

Earnings do not include any form of unearned income such as dividends, rents, interest, capital gains, income received from any form of deferred compensation, retirement, pension plan, income from royalties, or disability benefits.

ELIMINATION PERIOD -- means the number of days of Disability from the start of a Continuous Disability for which no benefits will be paid. The Data Page shows the Elimination Period for the Disability Benefit section and the Social Insurance Substitute Benefit section, if applicable.

FAMILY BENEFIT AMOUNT -- means amount(s) payable for Your spouse or dependents, if any, for Your retirement or disability under Social Security.

FULL TIME WORK -- means at least the same average number of hours per week as You Worked during the 12 month period prior to Disability.

HOME OFFICE -- means Principal Life Insurance Company, 711 High Street, Des Moines, Iowa 50392-0001.

INJURY -- means accidental bodily injury which occurs on or after the Policy Date and while this policy is in force.

INTERRUPTED ELIMINATION PERIOD -- means if Your Disability is not continuous the Elimination Period will be met if the required number of days of Disability occur in a period that is:

1. Twice as long as the Elimination Period; and

2. Less than one year.

Disability may be from the same or a different cause. The periods of Disability will be combined to meet the Elimination Period.

PRINCIPAL LIFE/MCBARRON
000009

**MAXIMUM BENEFIT PERIOD** – starts after satisfaction of the Elimination Period and is the longest time for which benefits will be paid for any one Continuous Disability. The Maximum Benefit Period for this policy is shown on the Data Page.

**OWNER** – means the person(s) and/or entity(ies) named as the Owner in the application or a later written request for change of ownership which is approved by Us. The Owner may exercise every right and privilege provided by this policy, except that benefits will be paid as stated in the Payment Of A Claim provision. If You are not the Owner and the Owner dies before You, You become the Owner unless the Owner has provided for a successor owner.

**POLICY ANNIVERSARY** – is computed from the Policy Date. For example, if the Policy Date is June 5, 2010, the Policy Anniversary is June 5 of every year thereafter.

**POLICY DATE** – means the date coverage under this policy begins. This date is shown on the Data Page.

**PRIMARY INSURANCE AMOUNT** – means the amount payable to You for retirement or disability under Social Security. It does not include benefits payable because of Your spouse or dependents, if any.

**RAILROAD RETIREMENT** – means benefits payable to You for disability or retirement under the Railroad Retirement Act of the United States, as amended.

**RECURRING DISABILITY** – means a continuation of a prior Disability when:

1. The recurrence of Disability occurs while this policy is in force and results from the same or directly related cause as the prior Disability for which We paid benefits or provided the Waiver of Premium Benefit; unless

2. After the prior Disability ends You return to Work at least 40 hours per week in any occupation for at least 6 consecutive months.

No new Elimination Period is required. We will pay benefits during the Recurring Disability for the remainder of the Maximum Benefit Period, if any.

**REGULAR CARE BY A DOCTOR** – means:

1. You are evaluated in person by a Doctor; and

2. You receive treatment appropriate for the condition causing Your Disability; and

3. Your evaluations and treatment are provided by a Doctor whose specialty is appropriate for the condition causing Your Disability; and

4. The evaluations and treatment must be at a frequency intended to return You to Full Time Work; and

5. You must pursue reasonable treatment options or recommendations to achieve maximum medical improvement.

We may require You to have Your Doctor provide Us with a written evaluation and treatment plan for the condition causing Your Disability, which meets generally accepted medical standards and is satisfactory to Us.

We may waive, in writing to You, the Regular Care By A Doctor requirement if it is determined by Us that continued care would be of no benefit to You.

HH 750                                           6                                           7725110

PRINCIPAL LIFE/MCBARRON
000010

RETIRED — means You are not actively Working in any capacity for pay or profit at the start of Your Disability and are receiving governmental retirement benefits, or qualified or nonqualified retirement benefits.

SICKNESS — means an illness or disease which first manifests itself on or after the Policy Date and while this policy is in force.   Complications of pregnancy and complications of childbirth are covered Sicknesses.

SOCIAL INSURANCE — means one or more of the following:

1. Primary Insurance Amount from Social Security;

2. Family Benefit Amount from Social Security;

3. Disability benefits or settlements from Workers Compensation;

4. Disability or Retirement benefits from Railroad Retirement;

5. Retirement benefits from Social Security;

6. Any other benefits from any local, state or federal government plan that are established to replace or supplement Social Security, Railroad Retirement or Workers Compensation.

SOCIAL SECURITY — means retirement or disability benefits payable under the Social Security Act of the United States, as amended.  This includes the Primary Insurance Amount and Family Benefit Amount.

TOTAL DISABILITY — means solely due to Injury or Sickness:

1. During the Your Occupation Period

   a) You are unable to perform the substantial and material duties of Your Occupation; and

   b) You are not Working.

2. After the Your Occupation Period You are unable to Work in any occupation You are reasonably suited to by Your education, training and experience.

3. Both during and after the Your Occupation Period, You satisfy the requirements of the Claim Information section.

If You are Retired, Total Disability means, solely due to Injury or Sickness, You are unable to perform any of the normal activities of a retired person in good health and of like age and You satisfy the requirements of the Claim Information section.  If You are Unemployed, Total Disability means, solely due to Injury or Sickness, You are prevented from obtaining a job that You are reasonably suited to by Your education, training and experience and You satisfy the requirements of the Claim Information section.

In order to be eligible for Total Disability, there must also be no reasonable job or work site modifications which would allow You to Work.

UNEMPLOYED — means You are not actively Working in any capacity for pay or profit at the start of Your Disability and are not receiving governmental retirement benefits, or qualified or nonqualified retirement benefits.

WE, OUR, US — means Principal Life Insurance Company.

HH 750                                          7                                    7725110

PRINCIPAL LIFE/MCBARRON
000011

WORK/WORKING — means You perform a labor or service, including but not limited to supervision, management or direction for any business activity, for which You receive Earnings.

WORKERS COMPENSATION — means the benefits of the Workers Compensation Act, Occupational Disease Act, or similar law of any state or territory.

YOU, YOUR — means the person named as the Insured on the Data Page of this policy.

YOUR OCCUPATION — means the profession(s) or occupation(s), not a specific job(s) or a job with a certain employer(s), You were actively Working in (and not Retired or Unemployed from) at the start of Your Disability. If You are Working in more than one occupation, Your Occupation includes all occupations You were actively Working in at the start of Disability.

YOUR OCCUPATION PERIOD — means, beginning with the date of Total Disability, the period of time including the Disability Benefit Elimination Period plus the Your Occupation Period as shown on the Data Page.

## DISABILITY BENEFIT

We will pay benefits for Your Continuous Disability that begins on or after the Policy Date and while this policy is in force and subject to the policy provisions. Benefits start to accrue at the end of this section's Elimination Period. Benefits will continue during Your Continuous Disability but not beyond the Maximum Benefit Period.

For Total Disability, We will pay the Maximum Monthly Benefit shown on the Data Page.

## SOCIAL INSURANCE SUBSTITUTE BENEFIT

The Social Insurance Substitute Benefit is provided only if amounts for it are shown on the Data Page. To receive this benefit:

1. You must meet all the requirements of this section and of the Additional Proof of Loss for Social Insurance Substitute Benefit section; and

2. Benefits must be payable under the Disability Benefit section.

We will pay this section's monthly benefit for Your Continuous Disability. This section's monthly benefit is:

1. This section's Maximum Monthly Benefit shown on the Data Page when no Social Insurance is paid; or

2. One third of this section's Maximum Monthly Benefit shown on the Data Page if the only Social Insurance paid for Your Disability is any one of either the Primary Insurance Amount, Workers Compensation, Railroad Retirement, or any other benefit that replaces or supplements Social Security, Workers Compensation or Railroad Retirement.

HH 750                                  8                                  7725110

PRINCIPAL LIFE/McBARRON
000012

No Social Insurance Substitute Benefits will be paid under this section for any period:

1. You are not receiving benefits under the Disability Benefit section; or

2. During which two or more of the Social Insurances are paid for Your Disability; or

3. After Your Age 65 Policy Anniversary, unless Your Maximum Benefit Period is longer and You are receiving benefits under the Disability Benefit section; or

4. After You are eligible to receive full retirement benefits from Social Security or Railroad Retirement; or

5. For which You receive retirement benefits from Social Security or Railroad Retirement.

We will refund any Social Insurance Substitute Benefit premiums paid during the time You received retirement benefits from Social Security or Railroad Retirement. In order to provide a refund, We must be provided with written proof from the Social Security Administration, Railroad Retirement Board or other proof acceptable to Us of the period You received such retirement benefits.

Benefits start to accrue at the later of:

1. The end of this section's Elimination Period shown on the Data Page; or

2. When Social Insurance paid for Your Disability reduces to only one of either the Primary Insurance Amount, Workers Compensation, or Railroad Retirement.

**ADDITIONAL PROOF OF LOSS FOR SOCIAL INSURANCE SUBSTITUTE BENEFIT**

As a requirement for receiving the Social Insurance Substitute Benefit, You must give Us written proof, satisfactory to Us, of any Social Insurance paid during the period for which You are claiming a loss under this section. Such proof is required as part of Your original proof of loss and as often after that as We may reasonably require.

If We think it is reasonable that You would be entitled to any Social Insurance, We will require that You:

1. Apply for these benefits as soon as You are eligible or apply for these benefits within 30 days after receiving written notice from Us requiring You to do so; and

2. Give Us satisfactory proof within 30 days after Your receipt of Our notice that You have applied for these benefits as required; and

3. Promptly notify Us if You are approved or denied for any Social Insurance; and

4. Request reconsideration of Your application for Social Insurance, if it is denied, and appeal any denial of reconsideration if an appeal appears reasonable.

Payment of any Social Insurance Substitute Benefit You are eligible for will cease and will not resume, including payment of any past due benefits, until You comply with 1, 2, 3, and 4 above.

If You have a spouse or any dependents that may be eligible for benefits under Social Insurance because of Your Disability, We will require that You also apply for these benefits under the same terms specified in 1, 2, 3, and 4 above.

HH 750                                     9                        7725110

PRINCIPAL LIFE/McBARRON
000013

If because of Your failure to notify Us of Your approval of any Social Insurance an overpayment of the Social Insurance Substitute Benefit occurs, We will have the right to require repayment of any overpayment. The overpayment will be deducted from any future benefits paid for the current Disability or We will require prompt reimbursement from You.

## OTHER BENEFITS

This section describes additional benefits provided by this policy subject to the requirements specified in each of the following benefit provisions. In addition, You must satisfy the requirements of the Claim Information section to be eligible for these benefits.

### TRANSPLANT SURGERY BENEFIT

We will pay benefits under the Disability Benefit section and Social Insurance Substitute Benefit section (subject to those sections' terms and conditions) if Your Disability results from surgery involving a transplant of a part of Your body to another person.

### DEATH BENEFIT

If You die after satisfying the Elimination Period and while benefits are being paid under the Disability Benefit section or any attached rider, We will pay the Death Benefit shown on the Data Page. This benefit is in addition to any other benefit of this policy. This benefit is payable to the Benefit Recipient. If You are the Benefit Recipient at the time of Your death, this benefit will be paid to Your surviving spouse, if any, otherwise, to Your estate.

### REHABILITATION BENEFIT

Rehabilitation is voluntary if You qualify for benefits under the Disability Benefit section. If You, the Owner and We agree in writing on a rehabilitation plan in advance, We will pay a portion of reasonable expenses. The goal of the plan must be to return You to Work.

Any rehabilitation plan must be approved in advance by Us and outlined in a written plan of rehabilitation. The monthly benefit payable under the Disability Benefit section and Social Insurance Substitute Benefit section (subject to those sections' terms and conditions) will continue, unless modified by the rehabilitation plan.

Rehabilitation assistance may include:

1. Coordination of medical services;
2. Vocational and employment assessment;
3. Purchasing adaptive equipment;
4. Business/financial planning;
5. Retraining for a new occupation;
6. Education expenses.

We will periodically review the plan and Your progress and We will continue to pay for the agreed upon expenses as long as We determine that the plan will return You to Work.

PRINCIPAL LIFE/McBARRON
000014

**WAIVER OF PREMIUM BENEFIT**

In a period of Continuous Disability, if You are Disabled for the lesser of 90 days or the Elimination Period and You satisfy the requirements of the Claim Information section:

1. We will refund the monthly pro rata portion of any premium paid for coverage after the date a Continuous Disability began; and

2. We will waive the payment of premiums which come due during the Continuous Disability.

Premium payments will begin on the next premium due date after You are no longer receiving benefits under this policy or Your Disability ends, whichever is later.  We will not waive premiums beyond Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later, unless Your policy is renewed subject to the Conditional Renewal section and You later become eligible for the Waiver of Premium Benefit.

## EXCLUSIONS AND LIMITATIONS

The following exclusions and limitations apply to this policy and any attached riders.

**EXCLUSIONS**

This policy does not pay benefits for an Injury or Sickness which in whole or in part is caused by, contributed to by, or which results from:

1. Intentional, self-inflicted injury; or

2. Your commission of or Your attempt to commit a criminal act, or Your involvement in an illegal occupation or activity; or

3. The suspension, revocation or surrender of Your professional or occupational license or certification; or

4. Active military service during a military action or conflict; or

5. Loss We have excluded by name or specific description in any attached rider or endorsement.

No benefits are payable for any period during Your Continuous Disability You are incarcerated in a penal or correctional institution for a period of 30 consecutive days or longer.

**LIMITATION WHEN OUTSIDE THE UNITED STATES OR CANADA**

Benefits will be limited to 12 months during Your Continuous Disability unless You reside in the United States or Canada for at least six consecutive months in each calendar year.

HH 750                                           11                                    7725110

PRINCIPAL LIFE/McBARRON
000015

**LIMITATION DUE TO NORMAL PREGNANCY OR CHILDBIRTH**

If the Elimination Period for Your Disability Benefit is less than 90 days, then normal pregnancy and normal childbirth are not covered Sicknesses. However, if the Elimination Period is equal to or greater than 90 days, then normal pregnancy and normal childbirth are covered Sicknesses subject to the definition of Disability.

**PRE-EXISTING CONDITION LIMITATION**

We will not pay any claim for a Disability or loss which:

1. Begins within 2 years after the effective date of coverage(s); and
2. Results from a pre-existing condition which was not disclosed or was misrepresented in this policy's application.

Pre-existing condition means a condition:

1. For which medical treatment, testing or medication was recommended by a Doctor or received from a Doctor within the 2 year period prior to the effective date of coverage(s); or
2. Which has caused symptoms within the 2 year period prior to the effective date of coverage(s) which would cause an ordinarily prudent person to seek diagnosis, care or treatment.

**OTHER EXCLUSIONS AND LIMITATIONS**

There may be other exclusions or limitations in this policy in addition to those stated in this section. Additional exclusions or limitations, if any, are described in riders or endorsements attached to and a part of this policy.

## CLAIM INFORMATION

**NOTICE OF CLAIM AND PROOF OF LOSS**

You (or someone acting as Your legal representative) must fulfill all of the following requirements:

1. Give Us written notice of claim, including Your name and policy number, within 30 days of the date Your Disability began.

   Failure to provide timely notice of a claim will limit past benefit payments under all policy provisions. If You qualify for benefits under the terms of the policy, past benefits will only be payable for a period of six months prior to the date We received the notice of claim in the Home Office.

2. Send any proof of loss requested by Us to Our Home Office within 90 days after the end of each monthly period for which You are claiming Disability.

   If You have not submitted proof of loss acceptable to Us within one year from the date required, benefits will be denied. An exception will be made only if You and the Owner were not competent to make a claim.

3. Provide proof of loss requirements at a reasonable frequency required by Us.

HH 750                                    12                                    7725110

PRINCIPAL LIFE/McBARRON
000016

4.  Fully cooperate with Us concerning all matters relating to this policy and any claims filed under the policy.

We will:

1.  Send a claim form upon Our receipt of notice of claim. If We do not furnish the claim form within 15 days after notice of claim was sent to Us, You or the Owner should send Us a letter describing in detail the date of disability, the cause and extent.

2.  Promptly notify You and the Owner (if You are not the Owner) if any additional proof of loss requirements are necessary before a claim determination can be made.

3.  Pay the benefit as outlined by the policy provisions, subject to the proof of loss requirements.

4.  Promptly notify You and the Owner (if You are not the Owner) if benefits are not payable and why.

We must be provided with satisfactory written proof of loss. This is information that We deem necessary to determine whether benefits are payable and the amount of benefits payable. If the proof of loss requirements We request are not received, the claim will be denied. Proof of loss requirements include, but are not limited to:

1.  Any requested claim form including claim forms from You and Your Doctor(s) or the letter described above;

2.  Documentation demonstrating You are under Regular Care By A Doctor;

3.  Documentation of objective medical evidence of Your Injury or Sickness;

4.  Copies of medical records, test results and/or Doctor's progress notes;

5.  Financial documents, which may include copies of Federal Income Tax Returns, Certified Public Accountant's statements, billing/expense information, bank statements, cancelled checks, IRS authorization, or other documents We deem necessary;

6.  Examination(s) of financial records performed by Us or an independent financial examiner hired by Us;

7.  Employer/employment information;

8.  Independent Medical Examination(s). (See Independent Medical Examination provision below);

9.  A personal interview with a company representative, which may include a statement under oath;

10. Evidence that reasonable job or work site modifications are not feasible; and

11. Other proof of loss requirements We deem necessary.

Any costs involved in submission of proof of loss requirements are Your responsibility to pay, except for costs incurred by Us in numbers 4, 6 and 8 above.

PRINCIPAL LIFE/MCBARRON
000017

## INDEPENDENT MEDICAL EXAMINATION

We have the right to require medical examinations, functional capacity evaluations and/or psychiatric examinations in the evaluation of what benefits, if any, are payable. The examinations may include x-rays, blood and urine tests, psychological tests, and other tests or procedures that We deem reasonable to evaluate whether You continue to meet the definition of Disability. The examinations will be performed by a doctor or specialist We deem appropriate for the condition and will be conducted at the time, place and frequency We reasonably require, while You claim to be Disabled. We reserve the right to choose the examiners. The examinations will be paid for by Us. Benefits will be denied if You fail to have an examination and any charges incurred for not attending an appointment, as scheduled, will be Your responsibility.

## CONTINUING BENEFITS

Continuing benefits are subject to the proof of loss requirements. If continuing proof of loss requirements are not received by Us, further benefits will be denied.

## PAYMENT OF A CLAIM

If it is determined that benefits are payable, We will:

1. Pay the first month's benefit one month from the date the Elimination Period is satisfied.

2. Pay one-thirtieth of the appropriate monthly benefit for each day of any period of less than a full month for which benefits are payable.

3. Pay continuing monthly benefits at the end of each month of Disability (subject to the proof of loss requirements).

4. Pay any unpaid benefits due when Your Disability ends.

5. Pay benefits to the Benefit Recipient unless otherwise indicated in the policy or any attached riders.

6. If, during a Disability, You are determined to not be competent, We may pay up to $1,000.00 in any due and unpaid benefits to any relative by blood or connection by marriage We believe is entitled to it. If We pay this amount in good faith, We will not be liable to anyone else for the amount We paid. In order to continue benefits beyond $1,000.00, We will require proof of a durable power of attorney or the appointment of a conservator.

   Upon Your death, if there are additional benefits payable, other than the Death Benefit, beyond the $1,000.00, We will pay these additional benefits to Your estate.

## OVERPAYMENT OF BENEFITS

If an overpayment of benefits should occur, We have the right to either recoup the overpayment from future claim benefits or require reimbursement within 60 days from You.

## LEGAL ACTION

Legal action may not be started against Us to recover on this policy until 60 days after filing of proof of loss and not more than 3 years after the filing of proof of loss as required under this policy.

PRINCIPAL LIFE/McBARRON
000018

# PREMIUMS AND REINSTATEMENT

## PAYMENT OF PREMIUM

The first premium for this policy is due on the Policy Date. After that, premiums are payable in the amount and frequency chosen from those shown on the Data Page. The Owner may change the frequency of premium payments except that We will not allow a change while You are Disabled. All premiums are to be sent as provided in the premium notices.

## GRACE PERIOD

Except for the first premium, We allow a grace period of 31 days after the premium due date to pay the premium due. The policy will stay in force during the grace period.

## REFUND OF PREMIUMS

Any refund of premiums made under this policy or attached riders will be paid to the Benefit Recipient unless premiums are remitted by Your employer. In this case, all premium refunds will be paid to Your employer.

## REFUND AFTER DEATH

We will refund any full month's premium paid for coverage beyond the date of Your death. We must be given written proof, satisfactory to Us, of Your death.   The premium refund will be paid as specified in the Refund of Premiums provision. If there is no Benefit Recipient or employer who remitted premiums, then We will refund any premium to the Owner if the Owner is not You. Otherwise the premium will be refunded to Your spouse or to Your estate if You have no spouse.

## TERMINATION

This policy terminates on the first of:

1. Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later, unless renewed under the Conditional Renewal section; or

2. Our receipt of the Owner's written request to terminate it; or

3. The end of the grace period; or

4. Your death.

If You are Disabled under the terms of this policy (not to include the Waiver of Premium Benefit) prior to and continuing through the date specified in number 1 above, then this policy will remain in force with no further premiums due until the earlier of the end of Your Disability or the end of the Maximum Benefit Period.

PRINCIPAL LIFE/MCBARRON
000019

## REINSTATEMENT

With Our approval, this policy may be reinstated anytime within one year after termination.   We may require an application and evidence of insurability under Our then current underwriting guidelines.

When We require an application for reinstatement and if We have received the required premiums, reinstatement takes effect on the date We approve the application.  If We do not decline reinstatement in writing within 45 days from the date of the application, the policy will be reinstated on the 45th day after the date of the application.

When no application for reinstatement is required by Us, reinstatement takes effect on the date We receive the required premiums in Our Home Office.

A reinstated policy only covers a Disability from:

1.  A Sickness which first manifests itself more than 10 days after the date reinstatement takes effect; or

2.  An Injury which occurs after the date reinstatement takes effect.

A reinstated policy is subject to any provisions or changes attached to the reinstated policy.

## SUSPENSION DURING MILITARY SERVICE

This policy will be suspended while You are on full-time active duty in the military service of any nation or international authority.  Suspension will be effective as of the date active duty starts.  Active duty does not include training by reservists that lasts 90 days or less.  Disabilities that occur as of the date Your full-time active duty begins until Your active duty ends and the policy is restored are not covered.  We will refund the pro rata portion of any premium paid for a period beyond the date of suspension.  The suspended policy may be restored without proof of insurability if:

1.  The active duty ends within 5 years from the date of suspension; and

2.  The Owner applies in writing and premiums are paid within 180 days following the date active duty ends.

Your coverage will start again as of the date We receive the written request and premiums to restore the policy, but not before the date active duty ends.  Only a Disability from a Sickness which first manifests itself or an Injury which occurs after the policy is restored is covered.  Once restored, all rights under the policy will be the same as before the policy was suspended.  Premiums will be at the same rate as they would have been had the policy remained in force.

## CONDITIONAL RENEWAL

This policy is conditionally renewable on an annual basis beginning with the Age 65 Policy Anniversary or after five years from the Policy Date, whichever is later, for life if the terms and conditions of this section are met.

PRINCIPAL LIFE/MCBARRON
000020

To renew the policy for one year, all of the following conditions must be satisfied:

1. You are not receiving a benefit under this policy or any attached rider at the time of renewal.

2. You must have been actively Working at least 30 hours each week for the 12 consecutive months preceding renewal.

3. You are Working at least 30 hours a week at the time of renewal.

4. The policy is in force with no premium in default.

5. We receive the Owner's renewal request in writing by the Age 65 Policy Anniversary or, if applicable, the end of five years from the Policy Date, and by each Policy Anniversary thereafter for any subsequent one-year renewals.

6. The renewal policy premium is paid. The renewal policy premium will be based on those rates in effect for Your age at the time of renewal.

We reserve the right to require proof from time to time that You continue to Work at least 30 hours a week. If at anytime You are Working less than 30 hours a week, this policy will terminate as of the date You no longer Worked at least 30 hours a week. We will return the unearned premiums paid for any period not covered by this policy.

If the policy is renewed under this section, the benefits are the same, and subject to the same terms, as those in the policy, except as follows:

1. For any period of Disability beginning after renewal and while this policy is in force, the Maximum Benefit Period is two years and the Your Occupation Period is two years; and

2. Benefits are not payable for Disability beginning after renewal if You are Retired or Unemployed; and

3. All riders that contain a Termination provision are not renewable under this section. Any other riders, including exclusion or modified coverage riders, will be renewed and remain a part of the policy; and

4. The Social Insurance Substitute Benefit, if included, is not renewable after the Age 65 Policy Anniversary.

## POLICY ADJUSTMENT OPTIONS

Subject to Our then current underwriting guidelines which may include requiring evidence of insurability, the Owner may request policy adjustments while the policy is in force with no premiums in default, and You are not Disabled. To request an adjustment, an application signed by the Owner is required. If evidence of insurability is required, the application must also be signed by You, if You are not the Owner. An adjustment is effective on the Adjustment Date, subject to Our prior approval and Our receipt of the required premium.

The adjusted benefits apply to a Disability from a Sickness which first manifests itself or an Injury which occurs on or after the Adjustment Date and while this policy is in force.

Any adjustment will change the information on the Data Page. We will provide new Data Pages.

HH 750                                   17                                   7725110

PRINCIPAL LIFE/McBARRON
000021

# THE CONTRACT

## ENTIRE CONTRACT

The policy, the attached applications, and any attached riders or endorsements make up the entire contract.

## ALTERATIONS

Only Our corporate officers may modify or waive anything in, or approve changes to, the policy.  The change must be attached to the policy.  No one else, including the agent or broker, has the authority to change the policy or waive any provision.

## TIME LIMIT ON CERTAIN DEFENSES

In issuing the coverage(s) under this policy and any attached riders, We have relied on the statements and representations on the application.  We have the right to void the coverage(s) due to a material misstatement or omission in the application.  However, after two years from the effective date of coverage(s), no material misstatements or omissions, except fraudulent statements or omissions, made by You or the Owner in an application will be used to void the coverage(s).

Applications include, but are not limited to, the initial application(s), applications for reinstatement, benefit update, automatic increase option, and any underwritten adjustment.

No claim for Disability or loss covered by this policy or any attached riders starting after two years from the date coverage has been in effect will be reduced or denied because a Sickness or Injury existed before the effective date of coverage(s) unless the condition is excluded by name or description.  Sickness or Injury fully disclosed on the application(s) will be covered, unless excluded by name or description.

## FRAUD

Upon a judicial decision in a civil or criminal court that You and/or the Owner have committed fraud in obtaining this policy or the filing of a claim under this policy, We may void this policy.

## MISSTATEMENT OF AGE

If Your age has been misstated, the coverage of this policy will be what the premium paid would have purchased at Your correct age.

## CHANGE OF OWNER OR BENEFIT RECIPIENT

The Owner may name a new Owner or Benefit Recipient by giving Us a request in writing.  Our approval is required and the change is not effective until We approve it.  Once approved, the change is effective on the date the request was signed by the Owner

## ASSIGNMENT

We are not bound by an assignment until received in a written form acceptable to Us at Our Home Office.  We assume no responsibility for any assignment's validity.  An assignment does not change the ownership of this policy.

HH 750                                                      18                                            7725110

PRINCIPAL LIFE/MCBARRON
000022

## CAPITAL SUM BENEFIT RIDER

This rider is part of the policy.  It is issued in consideration of the application and payment of the premiums for the policy to which it is attached.  All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider.  The effective date of this rider is shown on the Data Page.

We will pay the Capital Sum Benefit shown on the Data Page if an Injury or Sickness results in Your total loss of use for any and every purpose or activity without any possibility of recovery of:

1.  The use of a hand or foot; or

2.  The sight of an eye.

This benefit is in addition to any other benefit provided by the policy or any other attached riders.  The Capital Sum Benefit is payable for only one loss in Your lifetime.  In order for this benefit to be paid:

1.  You must survive the loss for 30 days; and

2.  The policy and this rider must be in force.  If the policy and this rider are not in force, the loss must occur within 90 days after the Injury or Sickness which caused it and the Injury or Sickness must occur while the policy and this rider are in force.

### TERMINATION

This rider terminates on the first of:

1.  Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; or

2.  When We pay this rider's benefit; or

3.  Our receipt of the Owner's written request to terminate it; or

4.  Termination of the policy of which it is a part.

_Ley Zimpleman_
Chairman, President and CEO

Principal Life Insurance Company
Des Moines, Iowa  50392-0001

HH 751                                    1                                    7725110

PRINCIPAL LIFE/MCBARRON
000023

# PRESUMPTIVE DISABILITY BENEFIT RIDER

This rider is part of the policy.  It is issued in consideration of the application and payment of the premiums for the policy to which it is attached.  All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the Data Page.

## DEFINITION

PRESUMPTIVE DISABILITY occurs while the policy and this rider are in force and prior to the Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; and is an Injury or Sickness resulting in Your total loss of use for any and every purpose or activity without any possibility of recovery of:

    a) Power of speech; or

    b) Hearing in both ears; or

    c) Sight of both eyes; or

    d) The use of both hands, both feet, or one hand and one foot.

## PRESUMPTIVE DISABILITY BENEFIT

If You meet the definition of Presumptive Disability, We will consider You Disabled and pay benefits for Total Disability under the Disability Benefit section and Social Insurance Substitute Benefit section (subject to those sections' terms and conditions) of the policy, regardless of Your ability to Work or earn an income.

Benefits will start to accrue when the Presumptive Disability occurs, even if the Elimination Period has not been satisfied.  Monthly benefits will be paid as long as the Presumptive Disability continues, but no longer than the Maximum Benefit Period.  If Your Maximum Benefit Period shown on the Data Page is "to Age 65 Policy Anniversary", "to Age 67 Policy Anniversary" or "to Age 70 Policy Anniversary", the Maximum Benefit Period will be extended to "Lifetime" for benefits payable under the Disability Benefit section.

Once We begin paying benefits under this rider, the Regular Care By A Doctor requirement specified in the policy is waived.

If the Cost of Living Adjustment Rider is attached to the policy, no further increases will be provided under that rider after the end of the Maximum Benefit Period shown on the Data Page.

## TERMINATION

This rider terminates on the first of:

    1. Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; or

    2. Our receipt of the Owner's written request to terminate it; or

    3. Termination of the policy of which it is a part.

If You are Presumptively Disabled under the terms of this rider (not to include the Waiver of Premium Benefit) prior to and continuing through the date specified in number 1 above, then the policy and this rider remains in force with no further premiums due until the earlier of the end of Your Presumptive Disability or the end of the Maximum Benefit Period.

Chairman, President and CEO

Principal Life Insurance Company
Des Moines, Iowa  50392-0001

HH 755

1

7725110

PRINCIPAL LIFE/McBARRON
000024

# SUPPLEMENTAL HEALTH BENEFIT RIDER

This rider is part of the policy.  It is issued in consideration of the application and payment of the premiums for the policy to which it is attached.  All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider.  The effective date of this rider is shown on the current Data Page.

## BENEFIT

The Supplemental Health Benefit is in addition to any other benefit provided by the policy or any other attached riders and is payable one time in Your lifetime.  This rider pays the benefit amount shown on the current Data Page for any one of the following:

**Coronary Artery By Pass Graft (CABG) Surgery** - means the operative procedure for the correction of two or more blocked arteries of the heart.  This does not include angioplasty and/or any other intra-arterial procedures.

**Cancer** - means the presence of a malignant tumor characterized by the uncontrolled growth and metastasis of malignant cells, and the invasion of tissue.  This would include: Leukemia and malignant disease of the lymphatic system, such as Hodgkin's lymphoma Stage III and IV and invasive malignant melanoma.  The following diagnoses are not covered; any non-invasive cancer in-situ, Hodgkin's disease Stage I, prostate cancer Stage A, papillary cancer of the bladder, all skin cancers except invasive malignant melanoma (starting with Clark Level III).

**Stroke** - means any cerebrovascular incident producing neurological deficit lasting more than 24 hours and including infarction of brain tissue or hemorrhage into brain tissue.  Evidence of neurological deficit for at least 90 days has to be produced.

In order for this benefit to be paid:

1. The policy and this rider must be in force; and

2. The onset of the CABG, Cancer or Stroke must be after the effective date of this rider; and

3. You must be Continuously Disabled; and

4. You must survive the CABG Surgery, Cancer or Stroke for 90 days from the date of the onset of the CABG, Cancer or Stroke or from the date of Disability, which ever is later; and

5. You must be under Regular Care By A Doctor for the condition or operative procedure.

If the Presumptive Disability Benefit Rider is attached to the policy, that rider does not change any of the terms of this rider.

PRINCIPAL LIFE/MCBARRON
000025

**TERMINATION**

This rider terminates on the first of:

1. Your Age 65 Policy Anniversary; **or**
2. When We pay this rider's benefit; **or**
3. Our receipt of the Owner's written request to terminate it; **or**
4. Termination of the policy of which it is a part.

Chairman, President and CEO

**Principal Life Insurance Company**
**Des Moines, Iowa  50392-0001**

HH 776                                          2                                          7725110

PRINCIPAL LIFE/MCBARRON
000026

# RESIDUAL DISABILITY AND RECOVERY BENEFIT RIDER

This rider is part of the policy. It is issued in consideration of the application and payment of the premiums for this rider and for the policy to which it is attached. All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the current Data Page.

## RESIDUAL DISABILITY DEFINITIONS

CHANGE DATE — means each yearly anniversary of the start of a Continuous Disability. If a new Elimination Period is required because of a new Disability, new Change Dates will be set for the new Disability.

CPI-U — means the Consumer Price Index for All Urban Consumers (CPI-U) published by the United States Department of Labor. We will use a different index if:

1. The CPI-U is discontinued, delayed, or not otherwise available for use; or
2. The composition, base, or method of calculating the CPI-U changes so that We consider it inappropriate for this policy.

Any different index We choose will be one which We think best reflects the change in the cost of living in the United States.

CURRENT EARNINGS — means Your Earnings for each month while You are Disabled.

DISABILITY/DISABLED — means Total Disability. If the Residual Disability and Recovery Benefit Rider is attached to Your policy, Disability also means Residual Disability. If a Disability is caused by more than one Injury or Sickness, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

INDEX FACTOR — means, as of any Change Date, a factor which is based upon the change in the CPI-U on an annual basis. On the first Change Date, it is calculated by dividing the CPI-U for the calendar month three months before the first Change Date by the CPI-U for the calendar month three months before the date Your Continuous Disability began. In subsequent years, it is calculated by dividing the CPI-U for the calendar month three months before the current Change Date by the CPI-U for the calendar month three months before the prior year's Change Date. The Index Factor will never be less than 1.

LOSS OF EARNINGS — means Your Prior Earnings minus Current Earnings. This difference will be considered Loss of Earnings to the extent such loss is directly and independently due to the Injury or Sickness which caused Your Disability. We reserve the right to at least annually review and adjust Your Loss of Earnings and benefit payments to take into account fluctuations in Earnings.

PRIOR EARNINGS — means Your highest monthly average Earnings for any consecutive 12 months in the last 24 months before a Continuous Disability began. On each Change Date We will adjust the Prior Earnings by multiplying the Prior Earnings, as of the current Change Date, times the Index Factor. If a new Elimination Period is required because of a new Disability, Your Prior Earnings will again be determined for the new Disability without regard to any previous indexing.

PRINCIPAL LIFE/MCBARRON
000027

RESIDUAL DISABILITY -- means:

1. You are not Totally Disabled; and
2. Solely due to Injury or Sickness You have a Loss of Earnings equal to or greater than 20% of Your Prior Earnings and:
   a) You are able to perform some, but not all, of the substantial and material duties of Your Occupation or You are unable to work Full Time in Your Occupation; or
   b) You are working in another occupation; and
3. You satisfy the requirements of the Claim Information section of the policy.

If You are Retired, Residual Disability means, solely due to Injury or Sickness, Your ability to perform the normal activities of a retired person in good health and of like age is restricted. If You are Unemployed, Residual Disability means, solely due to Injury or Sickness, Your ability to obtain a job that You are reasonably suited for by education, training and experience is restricted.

While You are Working during a period of Residual Disability, You must Work to the full capacity allowed medically and vocationally in that occupation by Your Injury or Sickness including any reasonable job or work site modification.  If You choose not to Work to full capacity, benefits will be paid as if You are Working at full capacity in that occupation.

If You are not Totally Disabled and You choose not to Work, even though You are able to Work at any occupation for which You are reasonably suited by education, training and experience, benefits will be paid as if You are Working at full capacity in that occupation.

**RESIDUAL DISABILITY BENEFITS**

We will pay a percentage of the Maximum Monthly Benefit under the Disability Benefit section of the policy for Residual Disability that begins on or after the effective date of this rider and while the policy and this rider are in force and subject to the policy and rider provisions.  Benefits start to accrue at the end of the Disability Benefit section's Elimination Period.  Benefits for Residual Disability are payable to the end of the Maximum Benefit Period.

If an amount for the Social Insurance Substitute Benefit is shown on the Data Page in effect at that time, We will also pay a percentage of the Maximum Monthly Benefit under the Social Insurance Substitute Benefit section of the policy, provided You satisfy all requirements of that section.

Income earned by a business or professional entity will be determined by Your choice of either the cash or accrual accounting method.  The same method will be used to determine both Prior Earnings and Current Earnings throughout a Disability.  If the cash method is used, income earned but not received prior to the start of a Disability will be excluded from Your Current Earnings.

Regardless of the accounting method used, any bonuses or lump sum payments You receive will be assigned on a pro-rata basis to each month during which they are earned and retroactive adjustments will be made to the benefits previously paid under the policy.

For Residual Disability, the monthly amount We will pay is:

$$\frac{\text{Prior Earnings} - \text{Current Earnings}}{\text{Prior Earnings}} \qquad X \qquad \text{Maximum Monthly Benefit}$$

When the percentage payable exceeds 75% We will pay 100% of the Maximum Monthly Benefit.

For the first six months of a Residual Disability following the Elimination Period, the percentage paid will not be less than 50%.  If Your Elimination Period for the Social Insurance Substitute Benefit is longer than for the Disability Benefit, Social Insurance Substitute Benefits at the 50% level will be paid only until the end of the six month period for the Disability Benefit.

If You are Retired or Unemployed, 50% of the Maximum Monthly Benefit will be paid for Residual Disability.

HH 784                                2                                7725110

**RECOVERY BENEFIT DEFINITIONS**

DISABILITY/DISABLED – means Total Disability.  If the Residual Disability and Recovery Benefit Rider is attached to Your policy, Disability also means Residual Disability.  If a Disability is caused by more than one Injury or Sickness, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

RECOVERY CURRENT EARNINGS – means Your monthly Earnings after You return to Full Time Work.

RECOVERY LOSS OF EARNINGS – means Your Recovery Prior Earnings minus Your Recovery Current Earnings for the months after You return to Full Time Work.

RECOVERY PRIOR EARNINGS – means Your highest monthly average Earnings for any consecutive 12 months in the last 24 months before a Continuous Disability began.

**RECOVERY BENEFIT**

We will provide a Recovery Benefit if:

1. You are no longer Disabled; and
2. You are not receiving benefits under the Disability Benefit section of the policy; and
3. You return to Full Time Work immediately after a Continuous Disability for which benefits were payable under the Disability Benefit section; and
4. You have a Recovery Loss of Earnings equal to or greater than 20% of Your Recovery Prior Earnings; and
5. It can be validated that Your Recovery Loss of Earnings is directly and solely due to the prior Injury or Sickness that caused Disability; and
6. You satisfy the requirements of the Claim Information section of the policy.

If You were Retired or Unemployed prior to Disability, no Recovery Benefits will be payable.

Income earned by a business or professional entity will be determined by Your choice of either the cash or accrual accounting method.  The same method will be used to determine both Recovery Prior Earnings and Recovery Current Earnings.  If the cash method is used, income earned but not received prior to the start of a Disability will be excluded from Your Recovery Current Earnings.  If Residual Disability Benefits were payable just prior to Your eligibility to the Recovery Benefit, then the same accounting method that was used to calculate the Residual Disability Benefit will be used to calculate the Recovery Benefit.

Regardless of the accounting method used, any bonuses or lump sum payments You receive will be assigned on a pro-rata basis to each month during which they are earned and retroactive adjustments will be made to the benefits previously paid under the policy.

The amount of Recovery Benefit payable will be:

$$\frac{\text{Recovery Prior Earnings} - \text{Recovery Current Earnings}}{\text{Recovery Prior Earnings}} \quad \text{X} \quad \text{Maximum Monthly Benefit}$$

If the Cost of Living Adjustment Rider is a part of the policy, then the Recovery Benefit will be calculated based on the Adjusted Maximum Monthly Benefit being paid when You recovered from Your Disability.  There will be no additional increases under the Cost of Living Adjustment Rider while Recovery Benefits are payable under this rider.  There will be no Indexing of Recovery Prior Earnings while Recovery Benefits are payable under this rider.

The Waiver of Premium benefit in the policy will be provided while Recovery Benefits are payable under this rider.  Other benefits provided by Your policy will not be payable.

Recovery Benefits end when You no longer have a Recovery Loss of Earnings greater than 20% for any 2 consecutive months.

Recovery Benefits may not be paid beyond the policy Maximum Benefit Period.

PRINCIPAL LIFE/McBARRON
000029

**TERMINATION**

This rider terminates on the first of:

1.   Your Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; or
2.   Our receipt of the Owner's written request to terminate it; or
3.   Termination of the policy of which it is a part.

If You are eligible to benefits under the terms of the policy or any attached riders (not to include the Waiver of Premium Benefit) prior to and continuing through the date specified in number 1 above, then the policy and this rider will remain in force with no further premiums due until the earlier of the end of Your Disability or the end of the Maximum Benefit Period.   However, if You are receiving Recovery Benefits prior to and continuing through the date specified in number 1 above, the policy and this rider will remain in force with no further premiums due until the Recovery Benefits end.

Chairman, President and CEO

**Principal Life Insurance Company
Des Moines, Iowa  50392-0001**

HH 784                                         4                                         7725110

# FUTURE BENEFIT INCREASE RIDER

This rider is part of the policy. It is issued in consideration of the application and payment of the premiums for the policy to which it is attached. All definitions, provisions, exceptions, limitations, and other terms of the policy apply to this rider unless specifically changed by this rider. The effective date of this rider is shown on the current Data Page.

## DEFINITIONS

DISABILITY BENEFIT – is shown on the current Data Page. If there are multiple Maximum Monthly Benefits shown for the Disability Benefit, then for the purposes of this rider, the Disability Benefit is the Maximum Monthly Benefit shown for the remainder of the Maximum Monthly Benefit Period.

OPTION ANNIVERSARY – is the annual anniversary of the Option Date. For example, if the Option Date is June 5, 2010, the Option Anniversary is June 5 of every year thereafter.

OPTION DATE – is shown on the current Data Page.

TERM – is a six-year period as measured from the Option Date. If this rider's effective date is later than the Option Date, the first Term will equal the number of years remaining of the six-year period as measured from the Option Date.

TOTAL MONTHLY BENEFIT – means the sum of this policy's Maximum Monthly Benefits shown on the current Data Page. It includes the Disability Benefit and any Social Insurance Substitute Benefit. Total Monthly Benefit does not include any benefits provided by the Catastrophic Disability Benefit Rider, if part of the policy.

## INCREASE OPTIONS

This rider provides the opportunity to increase the Total Monthly Benefit. Increases are offered on each Option Anniversary during a Term, subject to the Limitations and Conditions provision of this rider.

Any increase to the Total Monthly Benefit resulting from this rider will be effective on the Option Anniversary for which it is offered, subject to the Acceptance And Rejection Of An Offer provision of this rider.

AUTOMATIC INCREASE - You can receive a Future Benefit Increase on each Option Anniversary based on the Consumer Price Index for All Urban Consumers (CPI-U) as published by the United States Department of Labor. If the index is discontinued, delayed, or otherwise not available for this use, or if the composition or basis of, or method of calculating the index changes so that We consider it not appropriate for calculating further Future Benefit Increase Options, We have the right to substitute what We believe is an appropriate index for the CPI-U.

This increase is provided without evidence of insurability, but will not exceed Our then current underwriting guidelines.

The increase is determined by multiplying the Total Monthly Benefit on the Option Anniversary just prior to the scheduled increase by an increase factor. If the Owner has decreased the Maximum Monthly Benefits under the Policy Adjustment Options section of the policy since the prior Option Anniversary, the Total Monthly Benefit is the decreased amount, which is then multiplied by the increase factor.

PRINCIPAL LIFE/MCBARRON
000031

The increase factor will be:

1. CPI-U 6 months prior to the Future Benefit Increase Option Anniversary; divided by
2. CPI-U 18 months prior to the Future Benefit Increase Option Anniversary; less
3. 1.00.

The increase factor, converted to a percentage, cannot be less than the Future Benefit Increase Option Minimum Index Percent nor greater than the Future Benefit Increase Option Maximum Index Percent shown on the current Data Page.

ADDITIONAL INCREASE - In addition to the automatic increase, you may also be eligible for an additional increase of up to a maximum benefit increase of $500.00, subject to our then current underwriting guidelines, except that You need not show evidence of good health. This $500.00 maximum includes any increase made under the automatic increase. Prior to the Option Anniversary, We will provide you with an application that must be completed and returned within 30 days of Our request to be considered for an additional increase.

## ACCEPTANCE AND REJECTION OF AN OFFER

The new premium amount which results from an increase offer made under this rider will be automatically billed. Increases are accepted by paying the new premium. Increases may be rejected by notifying Us in writing no later than 30 days after the Option Anniversary or by not paying the increase in premium. New Data Pages reflecting any increase in benefits will be provided.

## LIMITATIONS AND CONDITIONS

Increases provided by this rider are subject to the following limitations and conditions:

1. The adjusted Total Monthly Benefit applies to new Disabilities which start on or after that Option Anniversary. A Recurring Disability is not a new Disability.
2. If the Benefit Update Rider is part of the policy, increases will not be offered on any Option Anniversary that coincides with a review for a Benefit Update Adjustment.
3. Increases will not be offered for any Option Anniversary on which benefits are payable under the policy or any attached rider.

## RENEWAL

A renewal anniversary will occur on every sixth Option Anniversary. On each renewal anniversary while this rider is in force, We will require an application and other evidence which satisfies Us that You are insurable under Our then current underwriting guidelines except that You need not show evidence of good health. If We receive the information We require within 60 days of Our request and You qualify under Our underwriting guidelines in effect on the date the renewal application is completed, We will renew this rider for another Term.

This rider will be suspended if benefits are payable under the policy or any attached rider on a renewal anniversary. Once such benefits are no longer payable, You may renew this rider by providing the underwriting evidence that We require for renewal. A rider that is renewed following a period of suspension is renewed only for that portion of the six-year period that remains until the next renewal anniversary.

PRINCIPAL LIFE/McBARRON
000032

**TERMINATION**

This rider terminates, with no further offers available, when:

1. Underwriting evidence requested for renewal is not received within 60 days of Our request; or
2. You do not qualify for renewal under this rider's Renewal provision; or
3. The Owner rejects any two automatic increase offers, this includes any during the time the policy is terminated even if the policy and this rider are subsequently reinstated; or
4. You reach Your Age 55 Option Anniversary or the end of the first Term, whichever is later; or
5. The Owner sends Us a written request to terminate this rider; or
6. The policy, of which this rider is a part, terminates.

**REINSTATEMENT**

If this rider terminates under 1, 3, or 5 above, the Owner may request reinstatement of this rider subject to Our underwriting guidelines then in effect.

If this rider terminates under 6 above, it will be reinstated if the policy is reinstated in accordance with the policy terms for policy reinstatement.

_Larry Zimpleman_

Chairman, President and CEO

**Principal Life Insurance Company**
**Des Moines, Iowa  50392-0001**

PRINCIPAL LIFE/MCBARRON
000033

**DISABILITY INCOME POLICY.**   NON-CANCELLABLE AND GUARANTEED RENEWABLE AT GUARANTEED PREMIUM RATES TO YOUR AGE 65 POLICY ANNIVERSARY OR FOR FIVE YEARS FROM THE POLICY DATE, IF LATER.  CONDITIONALLY RENEWABLE THEREAFTER ON ANNUAL BASIS FOR LIFE, SUBJECT TO CHANGE IN PREMIUM RATES.  IF THE SOCIAL INSURANCE SUBSTITUTE BENEFIT IS INCLUDED, IT IS CONTINUABLE AT GUARANTEED PREMIUM RATES TO THE EARLIER OF YOUR AGE 65 POLICY ANNIVERSARY OR UPON RECEIPT OF SOCIAL SECURITY   RETIREMENT   BENEFITS   OR   RAILROAD   RETIREMENT   BENEFITS. NONPARTICIPATING.

7725110

PRINCIPAL LIFE/MCBARRON
000034

Mar 10 10 02:51p    Courtney                    123456,..           p.4

7725110

**Principal**
**Financial**
**Group**

Principal Life
Insurance Company
P.O. Box 14455
Des Moines, IA 50306-3455

| Disability Insurance
Application – PART A

## 1. Personal Information about the Proposed Insured

| Name (First, Middle, Last) | Gender | Date of Birth |
|---|---|---|
| Kevin W McBarron | ☒ Male    ☐ Female | |
| Street Address | Social Security Number | State of Birth (Country, if other than U.S.) |
| 10101 Quaker Ridge Ct | | NJ |
| City | State | Zip | Home Phone Number | Work Phone Number |
| Fishers | IN | 46037 | | ( 888 )723-9797 |
| Occupation/Duties | Driver's License Number | Driver's License State Issued |
| Financial Planners | | IN |

Have you smoked cigarettes or used a nicotine patch or gum within the past 12 months? ............... ☐ Yes   ☒ No
Are you a U.S. citizen?  ☒ Yes   ☐ No   If no, submit Confidential Non-US Citizen Questionnaire.

## 2. Indicate Coverage(s) Applying For

☒ Disability Income (Complete Sections 3-7 and Part C)
☐ Overhead Expense (Complete Sections 4-7, Part C, and the *Overhead Expense* Application Supplement)
☐ Disability Buy-Out (Complete Sections 4-7, Part C, and the *Buy-Out* Application Supplement)
☐ DI Retirement Security (Complete Sections 4-7, Part C, and the *DI Retirement Security* Application Supplement)
☐ Key Person Replacement (Complete Sections 4-7, Part C, and the *Key Person* Application Supplement)

## 3. Disability Income

Monthly Benefit Amount: $ 6000
Elimination Period:     ☐ 30 day    ☐ 60 day    ☒ 90 day    ☐ 180 day    ☐ 365 day
Benefit Period:         ☐ 2 year    ☐ 5 year    ☒ to age 65    ☐ to age 67    ☐ to age 70
Your Occupation Period: ☐ 2 year    ☐ 5 year    ☒ to age 65    ☐ to age 67    ☐ to age 70
SIS Monthly Benefit: $ _____   SIS Benefit Period must equal Base Benefit Period.
SIS Elimination Period:    ☐ 30 day    ☐ 60 day    ☐ 90 day    ☐ 180 day    ☐ 365 day
Adaptable Income Benefits (AIB) Note: AIBs program monthly benefits around other in-force coverage
1st AIB Monthly Benefit: $ _____   from day _____ to day _____
2nd AIB Monthly Benefit: $ _____   from day _____ to day _____
SIS AIB Monthly Benefit: $ _____   from day _____ to day _____

| Optional Benefit Riders | following: |
|---|---|
| ☐ Catastrophic Disability Benefit (CDB) Monthly Amount: $ _____ | ☐ Benefit Update (BU) AND |
| CDB Elimination Period: ☐ 90 day  ☐ 180 day  ☐ 365 day | Future Benefit Increase (FBI) |
| CDB Benefit Period: ☐ 2 year   ☐ 5 year   ☐ to age 65 | ☐ Benefit Update (BU) only |
| ☐ to age 67  ☐ to age 70 | ☒ Future Benefit Increase (FBI) only |
| ☐ Cost of Living Adjustment: ☐ 3% max ☐ 6% max | ☐ Neither BU or FBI |

☐ Extended Total Disability Benefit
   Aggregate Benefit Factor: ☐ 50    ☐ 75    ☐ 100
☒ Recovery Benefit: ☒ 1 year    ☐ 3 year
☐ Regular Occupation
☒ Residual Disability Benefit
☐ Short Term Residual Disability Benefit:    ☐ 6 month  ☐ 12 month
☐ Transitional Occupation Period:    ☐ 2 year  ☐ 5 year   ☐ to age 65   ☐ to age 67   ☐ to age 70
☐ Other _____

AA 1751-3      *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*      Page 1

PRINCIPAL LIFE/MCBARRON
000035

Mar 10 10 02:51p      Courtney                          123456. ᴜ9              p.5

**Principal**
**Financial**
**Group**

Principal Life
Insurance Company
P.O. Box 14455
Des Moines, IA 50306-3455

| Disability Insurance
| Application – PART A

Proposed Insured Kevin W McBarron _____   Policy Number (if known) _____

## 3. Disability Income (Continued)

**Owner (if other than Proposed Insured)** – (Please list owner below and sign Part C.)

Name _____   Address _____

City _____  State _____  Zip _____  Owner Taxpayer ID Number _____

**Benefit Recipient (if other than Owner) for Disability Income Only**

Name _____   Address _____

City _____  State _____  Zip _____

## 4. Premium Payer and Method of Payment

a. Premium paid by:   ☒ Proposed Insured 100 %      K.M ~~Employer~~ ~~100~~ %

b. If your employer pays any part of the premium, is it reportable by you as taxable income? ......... ☐ Yes   ☒ No

c. Premium Mode:   ☒ Annual   ☐ Semi Annual*   ☐ Quarterly*   ☐ Monthly EFT*
      * There is an additional charge for premium payment frequencies other than annual.

## 5. Other Disability Insurance

Do you have, are you applying for, or will you become eligible for in the next three years (based on
a qualifying period of employment), any other Disability Insurance?........................................... ☐ Yes   ☒ No

If Yes, please list below any Disability Income (listing any Catastrophic or Lifetime Benefits separately), Group
Disability, Association, State Disability, Retirement/Pension, Overhead Expense, Disability Buy-Out, Key-person,
Salary Continuation or Short Term Contingency Disability Insurance. Also include any policies that include disability
benefits provided under Accident or Sickness insurance, Pension, Retirement, Credit insurance plans, or Loan
Protection coverage.

| Company | Policy No. | Type of Coverage | Benefit Amt. or % of Income | Elim. Period | Benefit Period | Ind. Pay (I) Emp. Pay (E) | | Pending | | Replacing | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No | Yes | No |
| | | | | | | ☐ I | ☐ E | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ I | ☐ E | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ I | ☐ E | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ I | ☐ E | ☐ | ☐ | ☐ | ☐ |

Replacement  By signing this application, I agree to terminate the insurance policy(s) that I indicated above as being
replaced within 60 days of the acceptance of this policy. I understand that if I do not cancel or lapse the insurance
policy(s), Principal Life Insurance Company has the right to rescind (terminate as if never issued) any policy issued as
a result of this application.

AA 1751-3      *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal*      Page 2

PRINCIPAL LIFE/MCBARRON
000036

3

Mar 10 10 02:51p    Courtney                        123456...9            p.6

**Principal**
*Financial Group*

Principal Life
Insurance Company
P.O. Box 14455
Des Moines, IA 50306-3455

| Disability Insurance
Application – PART A

Proposed Insured  Kevin W McBarron _____    Policy Number (if known) _____

## 6. Financial

a. Unearned Income – Includes capital gains, interest, dividends, net rental income, pensions, annuities, and alimony. Is unearned income greater than 10% of earned income, or $30,000?........................... ☐ Yes   ☒ No

If Yes, itemize: _____

b. Net Worth – Is net worth, excluding primary residence, greater than $8,000,000? ...................... ☐ Yes   ☒ No

If Yes, itemize: _____

|  | Current Year | Last Yr. | 2 Yrs Ago |
|---|---|---|---|
| Tax Year: | 10 | 09 | 08 |
|  | Current YTD Income | Income Last Yr. | Income 2 Yrs Ago |
| c. Earned Income – Income as shown on Federal Income Tax Return: | | | |
| c1. Owner or Nonowner Employee's salary & bonus, (FormW-2). (less business expenses reported on IRS Form 2106) | $ | $ | $ |
| c2. Owner-Employee's share of after-tax corp profits or losses (after expenses) (minimum 20% active owner, (Form 1120 or 1120S) | | | |
| c3. Sole Proprietor net income, after expenses (Form 1040, Schedule C) | | | |
| c4. Share of Partnership or LLC net income, after expenses (Schedule K-1 or Form 1040, Schedule E) | | | |
| c5. Pension plan or Profit-Sharing contributions made on your behalf, by a business you own | | | |
| c6. Total Earned Income: Sum of (c1) thru (c5) for each year | $ | | |

If using Traditional application process, stop here and proceed to Part B (pages 4-7).

## 7. Medical Question

a. Within the last five years, have you had, been treated for, or been diagnosed as having a heart condition, chest pain, stroke, back or neck problem, psychological condition (including, but not limited to, counseling from a mental health or substance abuse provider, and/or psychotherapy), cancer, diabetes, alcohol abuse, or drug dependency?............................................................................................................................ ☐ Yes   ☒ No

If Yes, provide details in the Comments below, including dates and healthcare provider's name and address.

b. Current Height 5'11"  Weight 185  Have you lost more than 10 lbs. in the last year? ........ ☐ Yes   ☒ No

Comments: _____
_____
_____
_____
_____

If using Telesapp, proceed to Part C (page 8).

AA 1751-3      *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*      Page 3

PRINCIPAL LIFE/McBARRON
000037

1

| Principal<br>Financial<br>Group | **Principal Life Insurance Company**<br>**Principal National Life Insurance Company**<br>Members of Principal Financial Group® | P.O. Box 10431<br>Des Moines, IA 50306-0431 | **Insurance**<br>**Application** |
|---|---|---|---|

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

Proposed Insured KEVIN W MCBARRON

D.O.B. 04 / 22 / 1960    Policy Number (if known) _____

## PART B
All references to "you" mean the Proposed Insured.
### ACTIVITIES/HEALTH HABITS

1. In the last five years have you, or do you have plans to:

   a. be a member of any armed forces or military unit? .................................... ☐ Yes ☒ No

   b. pilot any type of aircraft?.......................................................................... ☐ Yes ☒ No

   c. engage in scuba/skin diving, motor vehicle racing, skydiving or any other hazardous sporting activity? ................................................................................... ☐ Yes ☒ No

   d. live outside the United States or Canada? (If yes, explain below) .................. ☐ Yes ☒ No

   e. travel outside the United States or Canada? (If yes, explain below).............. ☒ Yes ☐ No

2. In the last five years have you:

   a. been in a motor vehicle accident, been charged with driving while intoxicated or had more than one moving violation? (If yes, explain below).................................. ☒ Yes ☐ No

   b. been on parole or probation or charged with a felony or misdemeanor? (If yes, explain below) .................................................................................. ☐ Yes ☒ No

3. In the last ten years have you used any tobacco or nicotine products? .................... ☐ Yes ☒ No
   **(Indicate date last used and amount per day)**

   a. ☐ cigarettes _____  d. ☐ pipe _____

   b. ☐ cigars _____  e. ☐ chewing tobacco/snuff _____

   c. ☐ nicotine patch/gum _____  f. ☐ other _____

4. In the last ten years have you consumed alcoholic beverages? ............................... ☒ Yes ☐ No
   If yes, date last used? 2010 _____  Number of drinks per week: less than weekly

5. In the last ten years have you used cocaine, marijuana, methamphetamines, barbiturates or other controlled substances?....................................................................... ☐ Yes ☒ No

6. Have you ever been advised to limit or discontinue the use of alcohol or drugs; or sought or received treatment because of your alcohol or drug use?.................................. ☐ Yes ☒ No

### DETAILS TO QUESTIONS 1-6

| Quest. # | Include dates and details as requested above. |
|---|---|
| 1C | Additional details: CERTIFIED AND HAVE NOT IN THE LAST FIVE YEARS AND HE DOES NOT HAVE ANY PLANS. |
| 1E | MEXICO; Was travel in past or future.: PAST; Purpose of travel: VACATION; Past travel details: 2007 FOR 1 WEEK<br>ITALY; Was travel in past or future.: PAST; Purpose of travel: VACATION; Past travel details: 2009 FOR 10 DAYS<br>FRANCE; Was travel in past or future.: PAST; Purpose of travel: VACATION; Past travel details: 2009 FOR 10 DAYS<br>BAHAMAS; Was travel in past or future.: PAST; Purpose of travel: VACATION; Past travel details: 2009 FOR 1 WEEK |
| 2A | SPEEDING VIOLATION; Date of violation: 2008<br>SEE DETAILS AT END OF PART B... |

Page 4

AA 1800N IN
This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.

2

 **Principal** *Financial Group* | **Principal Life Insurance Company**<br>**Principal National Life Insurance Company**<br>Members of Principal Financial Group® | P.O. Box 10431<br>Des Moines, IA 50306-0431 | **Insurance Application**

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

Proposed Insured KEVIN W MCBARRON

D.O.B. 04 / 22 / 1960   Policy Number (if known) _____

**PART B** – (Continued)

**INCOME/OCCUPATION**
For Life, complete questions 7 and 8. For DI, complete questions 8-17. In all cases, Part B continues on the next page.

7. Annual income from occupation $ N/A _____   Other income $ N/A _____
   Source of other income N/A _____   Net Worth (Assets – Liabilities) $ N/A _____

8. Primary occupation FINANCIAL PLANNER   Employer SELF PLANNERS INC.

9. Current Employment Information
   a. Type of business or industry FINANCIAL PLANNING _____
   b. Job title PRESIDENT _____
   c. What are your job activities and percentage of time spent in each?
      PHONES 100%

   d. How many hours do you usually work per week in your primary job? 50 _____
   e. Total number of employees: Full-time 2 ____ Part-time 0 ____ Sub-contracted 0 _____
   f. How many employees do you supervise? 2

10. How long have you been employed by your current employer? 29 years ____ (If less than three years, provide details below, e.g., employers, occupations and dates for last five years.)

11. Do you work out of your home? (If yes, how many hours per week? _____ )   ☐ Yes ☒ No

12. Do you have any other part-time or full-time jobs? (If yes, explain below) ........................   ☐ Yes ☒ No

13. Are you actively at work on a full-time basis without medical restriction?
    (If no, explain below) .........................................................................   ☒ Yes ☐ No

14. Do you intend to change jobs or employment in the next 6 months? (If yes, explain below) ...................................................................................   ☐ Yes ☒ No

15. Have you ever requested or received any type of disability benefits (including workers' compensation and state disability) for an injury or illness? (If yes, explain below)............   ☐ Yes ☒ No

16. Do you have an ownership interest in any business you work for? ......................................   ☒ Yes ☐ No
    If yes, ownership percentage 100 ___ length of ownership 29 YEARS
    Type of business: ☐ C Corporation   ☒ S Corporation   ☐ Partnership
                      ☐ Sole Proprietorship   ☐ Limited Liability Company   ☐ Other _____

17. Have you, or any business owned in whole or part by you, ever been in bankruptcy or any similar proceedings? (If yes, provide date discharged, type and chapter)..................   ☐ Yes ☒ No

**DETAILS TO QUESTIONS 7-17**

| Quest. # | Include dates and details as requested above. |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

AA 1800N IN

Page 5

This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.

PRINCIPAL LIFE/MCBARRON
000039



| Principal Life Insurance Company<br>Principal National Life Insurance Company<br>Members of Principal Financial Group® | P.O. Box 10431<br>Des Moines, IA 50306-0431 | Insurance<br>Application |
| --- | --- | --- |

Only one company is the issuer and responsible for obligations of any given
policy and is hereinafter referred to as "the Company".

Proposed Insured KEVIN W MCBARRON

D.O.B. 04 / 22 / 1960   Policy Number (if known) _____

**PART B – (Continued)**
MEDICAL HISTORY (Provide details to yes answers, questions 18-20 below)

18. In the last five years, have you had, been treated for or been diagnosed as having:

    a. high blood pressure, heart attack, chest pain, heart murmur, irregular heart beat,
       stroke, or any other disease or disorder of the heart or blood vessels? .......................

    b. cancer or a tumor, cyst or growth? ...............................................................................

    c. asthma, bronchitis, emphysema, tuberculosis or any other disease or disorder of the
       lungs or respiratory system?........................................................................................

    d. seizure, paralysis, headaches, multiple sclerosis or any other disease or disorder of
       the brain or nervous system?........................................................................................

    e. chronic fatigue, stress, depression, anxiety or any other emotional or psychological
       disorder? ......................................................................................................................

    f. hepatitis, colitis, ulcer, cirrhosis, irritable bowel or any other disease or disorder of
       the liver, gallbladder, pancreas or digestive tract? ......................................................

    g. diabetes, borderline diabetes, sugar in the urine, thyroid disorder or any other disease
       or disorder of the glandular system? ...........................................................................

    h. kidney stones, nephritis, any blood or protein in the urine, sexually transmitted
       disease, prostate disorder, breast disorder or any other disease or disorder of the
       urinary or reproductive system?....................................................................................

    i. back or neck pain, disc problems, spinal sprain or strain, sciatica, arthritis, carpal
       tunnel syndrome, or any other disease or disorder of the bones, joints, or muscles? ...

    j. any disease or disorder of the eyes, ears, nose, throat or skin? ...................................

19. (DI Only) Are you currently pregnant or have you had complications of pregnancy in the
    last five years? .................................................................................................................NA

20. In the last five years, have you had, been treated for or been diagnosed as having HIV
    (Human Immunodeficiency Virus) Infection, positive HIV (Human Immunodeficiency
    Virus) test or AIDS (Acquired Immunodeficiency Syndrome)? ........................................

DETAILS TO QUESTIONS 18-20

| Quest. # | For yes answers, include dates, details, diagnosis, types and results of treatment, healthcare<br>provider's full name and address. |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |

This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.

PRINCIPAL LIFE/MCBARRON
000040

4

| Principal Financial Group | **Principal Life Insurance Company** **Principal National Life Insurance Company** Members of Principal Financial Group® | P.O. Box 10431 Des Moines, IA  50306-0431 | **Insurance Application** |

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

Proposed Insured KEVIN W MCBARRON

D.O.B. 04 / 22 / 1960   Policy Number (if known) _____

**PART B – (Continued)**
MEDICAL HISTORY (Provide details to yes answers, questions 21-26 below)

21. Who is your Primary Physician?  ☒ None
    a. Name _____  Phone Number _____

    Street _____  City _____  State ____ Zip ____

    b. Date last seen, reason and details _____

22. In the last five years:
    a. have you had any medical tests, hospitalization, illness or injury not provided in response to a previous question? (If yes, explain below)..................................................
    b. have you consulted a doctor, chiropractor, psychiatrist, psychologist, counselor, therapist or other healthcare provider not provided in response to a previous question? (If yes, explain below).................................................

23. Are you taking or have you been advised to take any medication or treatment not provided in response to a previous question? (If yes, explain below) .............................

24. Current Ht 5 ft 11 in  Wt 180 lb   Have you lost more than 10 lbs. in the last year?
    If yes, _____ lbs./kgs.  Indicate reason _____

25. a. Has either of your natural parents lived to at least age 60? .........................................
    b. Do any of your natural parents or siblings have a history of diabetes, cancer, stroke or heart disease? ......................................................................................................
    If yes, provide details (i.e., relationship, type of disease, age diagnosed, current age or age at death):
    _____
    _____

26. Have you ever had any life, health or disability insurance rated, ridered or declined?    ☐ Yes  ☒ No
    (If yes, explain below)..................................................................................................

DETAILS TO QUESTIONS 21-26

| Quest. # | Include dates and details as requested above. |
|---|---|
| 25B |  |

AA 1800N IN
This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.

PRINCIPAL LIFE/MCBARRON
000041

5

 **Principal Life Insurance Company**  **Principal National Life Insurance Company**  Members of Principal Financial Group®

P.O. Box 10431  Des Moines, IA  50306-0431

Insurance  Application

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

Proposed Insured  KEVIN W MCBARRON

D.O.B. 04 / 22 / 1960    Policy Number (If known)

| Quest. # | Include dates and details as requested. |
|---|---|
| 2A | SPEEDING VIOLATION; Date of violation: 2008 |
| 2A | SPEEDING VIOLATION; Date of violation: 2008 |
| 2A | License been suspended in the last five years.: NO |
| 4 | Additional details: HE HAS MAYBE FIVE DRINKS PER MONTH. |

AA 1800N IN

Page 7a

2

Mar 10 10 02:51p    Courtney                          123456.09            p.7

 **Principal**
*Financial*
*Group*

**Principal Life
Insurance Company**
P.O. Box 14455
Des Moines, IA 50306-3455

| **Disability Insurance
Application -- PART C** |

Proposed Insured  Kevin W McBarron

**Agreement/Authorization to Obtain and Disclose Information.**

("Company" means Principal Life Insurance Company)

**AGREEMENT: Statements in Application(s):** I represent that all statements in this application(s) are true and complete and were correctly recorded before I signed my name below. I understand and agree that the statements in this application(s), including all of its parts, and statements by the Proposed Insured in any medical questionnaire(s) that becomes a part of this application(s), will be the basis of any insurance issued. I understand that misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Insurance Effective:** I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application(s) has been received and accepted by the owner and the first premium paid; and (2) at the time of such receipt and payment, the person to be insured is actually in the state of health and insurability represented in this application(s), medical questionnaire(s), or amendment(s) that becomes a part of this application(s); and (3) the Part D of the completed Tele-App Interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy.

**Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on this application(s) and on any medical questionnaire(s) that becomes a part of this application(s) may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in the application(s).

---

☒ This application(s) is Cash on Delivery (C.O.D.); and no Conditional Receipt coverage is provided, or
☐ I have paid $ 3053 ⁵⁵  for Disability Income/$ _____  for Overhead Expense/$ _____  for Disability
Buy-Out/$ _____  for Key Person Replacement insurance which is no less than one month's advance premium.
If money was paid, I have been given the Conditional Receipt. In return I have read, understand, and agree to its terms,
or

If preapproved by Principal Life Insurance Company
☐ I have signed, dated and submitted to the Company one of the three documents listed below in this box. I have been given the Conditional Receipt. In return I have read, understand, and agree to its terms.
   • Payroll Deduction Authorization Form
   • Employer Pay Form
   • Other form acceptable to the Company

---

(continued on next page)

AA 1751-3        *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*        Page 8

PRINCIPAL LIFE/MCBARRON
000043

1

Mar 10 10 02:51p    Courtney                              12345b.JJ              p.8



**Principal**
*Financial*
*Group*

**Principal Life
Insurance Company**
P.O. Box 14455
Des Moines, IA 50306-3455

| **Disability Insurance
Application – PART C**

Proposed Insured  Kevin W McBarron

**(continued from previous page)**

## Agreement/Authorization to Obtain and Disclose Information

**AUTHORIZATION:** I authorize any insurance (or reinsuring) company, consumer reporting agency, governmental agency, insurance agent, broker, licensed representative, or any other organization, institution, or person having personal information (including physical, mental, drug, or alcohol use history) regarding the named Proposed Insured to provide to the Company, its representatives, or reinsurers, any such data. I authorize the Company to conduct a telephone interview in connection with my application(s) for insurance.

I authorize the Medical Information Bureau, Inc. (MIB, Inc.) to furnish data to the Company or its reinsurers. I authorize Principal Life to release any such data to MIB, Inc. or as required by law. Notwithstanding any other provision in this form, the authorization to release data to the MIB, Inc. shall survive the termination of this form to the extent necessary to confirm, correct, or update previously supplied data to the MIB, Inc. Data released may include results of my medical examination or tests requested by the Company. I understand that the data obtained by use of this authorization will be used by the Company to determine eligibility for insurance.

I have received a copy of the "Notice of Insurance Information Practices," which includes notice required by any Fair Credit Reporting Act. It also describes MIB, Inc. I agree that this authorization shall be valid for 24 months from the earlier of: (1) the date of this application(s), or (2) the date of my policy. I may revoke this authorization for information not then obtained. Such revocation must be in writing. It will not be effective until received at the Company's Home Office. I agree that a photocopy of this authorization is as valid as the original. I have received a copy of this authorization.

**Warning:** It is a crime to provide false, misleading, or incomplete information to an insurance company for the purpose of defrauding the company or any other person. Penalties include imprisonment and/or fines and denial of insurance benefits.

**SIGNATURES (Please do not print name below. Signatures, City, State and Date are required.)**

| Proposed Insured | Signed at: City | State | Date |
|---|---|---|---|
| X *McRarron* | *Fishers* | IN | 3 / 15 / 10 |
| Disability Income; Owner (if other than Proposed Insured)<br>X | Title (if Corporation, Officer other than Proposed Insured) | | Date<br>/ / |
| Overhead Expense; Owner (if other than Proposed Insured)<br>X | Title (if Corporation, Officer other than Proposed Insured) | | Date<br>/ / |
| Disability Buy-Out; Owner<br>X | Title (if Corporation, Officer other than Proposed Insured) | | Date<br>/ / |
| Key Person Replacement; Owner<br>X | Title (Officer other than Proposed Insured) | | Date<br>/ / |
| Agent/Broker/Licensed Representative<br>X | License Number  36444 | | Date<br>3 / 15 / 10 |
| Co-signature by Resident Licensed Rep. (If applicable in your state)<br>X | License Number | | Date<br>/ / |

AA 1751-3        *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*        Page 9

PRINCIPAL LIFE/McBARRON
000044

Principal Life
Insurance Company
P.O. Box 1-465
Des Moines, Iowa 50306-9455

Disability Insurance
Application – PART D

Proposed Insured Kevin W Mc Barron

D.O.B. 04 / 72 / 1980    Policy Number IZ25110

**PART D—Agreement/Acknowledgement of Delivery ("Company" means Principal Life Insurance Company)**

**Agreement:**

Statements in Application: I have read at the questions and answers obtained during the telephone application interview. This includes Part D to the Proposed Insured, I represent that all...

When insurance Effective: I understand and agree that the Company shall incur no liability unless (1) policy issued on this application has been invited and accepted by the owner and the first premium paid; and (2) at the time of each delivery...

Limitations of Authority: I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive...

**Acknowledgement of Delivery:**

I acknowledge that policy numbered IZ25110 _____ was delivered to me today and is based on the life of Kevin W McBarron _____

**Insurability Delay:**

If the premium deposit or another form acceptable to the Company was submitted with Part A and C of the application...

If the application was submitted on a C.O.D. (Cash on Delivery-no premium deposit) basis, I verify that the information in Part A and B of the application truly reflects the Proposed Insured's health or insurability as of the date I sign Part D of this application.

Warning: It is a crime to provide false, misleading, or incomplete information to an insurance company for the purpose of defrauding the company or any other person. Penalties include imprisonment and/or fines and denial of insurance benefits.

SIGNATURES (Persons do not print names below. Signatures, City, State and Date as noted)

| Signature of Owner (if other than Proposed Insured) | Title (if Corporation, Officer other than Proposed Insured) | | Date |
| --- | --- | --- | --- |
| X Kevin Mc Barron | Kevin W McBarron | NO | 09 / 01 / 10 |
| Signature of State from Proposed Insured | City, State and Date | | Date |

AA 1950-1                                    Last Page

PRINCIPAL LIFE/MCBARRON
000045

# EXHIBIT 2

Mar 10 10 02:51p     Courtney                    123456⸱⸱⸱          p.4

7725110

**Principal**
*Financial Group*

**Principal Life
Insurance Company**
P.O. Box 14455
Des Moines, IA 50306-3455

| **Disability Insurance
Application – PART A**

## 1. Personal Information about the Proposed Insured

| Name (First, Middle, Last) | Gender | Date of Birth |
|---|---|---|
| Kevin W McBarron | ☒ Male  ☐ Female | |
| Street Address | Social Security Number | State of Birth (Country, if other than U.S.) |
| 10101 Quaker Ridge Ct | | NJ |
| City | State | Zip | Home Phone Number | Work Phone Number |
| Fishers | IN | 4603? | | ( 888 ) 723-9797 |
| Occupation/Duties | Driver's License Number | Driver's License State Issued |
| Financial Planners | | IN |

Have you smoked cigarettes or used a nicotine patch or gum within the past 12 months? ............. ☐ Yes  ☒ No
Are you a U.S. citizen?  ☒ Yes  ☐ No   If no, submit Confidential Non-US Citizen Questionnaire.

## 2. Indicate Coverage(s) Applying For

☒ Disability Income (Complete Sections 3-7 and Part C)
☐ Overhead Expense (Complete Sections 4-7, Part C, and the *Overhead Expense* Application Supplement)
☐ Disability Buy-Out (Complete Sections 4-7, Part C, and the *Buy-Out* Application Supplement)
☐ DI Retirement Security (Complete Sections 4-7, Part C, and the *DI Retirement Security* Application Supplement)
☐ Key Person Replacement (Complete Sections 4-7, Part C, and the *Key Person* Application Supplement)

## 3. Disability Income

Monthly Benefit Amount: $ 6000

| | | | | | |
|---|---|---|---|---|---|
| Elimination Period: | ☐ 30 day | ☐ 60 day | ☒ 90 day | ☐ 180 day | ☐ 365 day |
| Benefit Period: | ☐ 2 year | ☐ 5 year | ☒ to age 65 | ☐ to age 67 | ☐ to age 70 |
| Your Occupation Period: | ☐ 2 year | ☐ 5 year | ☒ to age 65 | ☐ to age 67 | ☐ to age 70 |

SIS Monthly Benefit: $ _____   SIS Benefit Period must equal Base Benefit Period.

| SIS Elimination Period: | ☐ 30 day | ☐ 60 day | ☐ 90 day | ☐ 180 day | ☐ 365 day |
|---|---|---|---|---|---|

Adaptable Income Benefits (AIB) Note: AIBs program monthly benefits around other in-force coverage
1st AIB Monthly Benefit: $ _____  from day _____ to day _____
2nd AIB Monthly Benefit: $ _____  from day _____ to day _____
SIS AIB Monthly Benefit: $ _____  from day _____ to day _____

### Optional Benefit Riders

☐ Catastrophic Disability Benefit (CDB) Monthly Amount: $ _____
  CDB Elimination Period: ☐ 90 day ☐ 180 day ☐ 365 day
  CDB Benefit Period: ☐ 2 year ☐ 5 year ☐ to age 65
    ☐ to age 67 ☐ to age 70
☐ Cost of Living Adjustment: ☐ 3% max ☐ 6% max
☐ Extended Total Disability Benefit
  Aggregate Benefit Factor: ☐ 50 ☐ 75 ☐ 100
☒ Recovery Benefit: ☒ 1 year ☐ 3 year
☐ Regular Occupation
☒ Residual Disability Benefit
☐ Short Term Residual Disability Benefit: ☐ 6 month ☐ 12 month
☐ Transitional Occupation Period: ☐ 2 year ☐ 5 year ☐ to age 65 ☐ to age 67 ☐ to age 70
☐ Other _____

[Indicate if you are applying for one of the following:]
☐ Benefit Update (BU) AND
   Future Benefit Increase (FBI)
☐ Benefit Update (BU) only
☒ Future Benefit Increase (FBI) only
☐ Neither BU or FBI

AA 1751-3     *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*     Page 1

PRINCIPAL LIFE/McBARRON
000035

2

Mar 10 10 02:51p      Courtney                    123456.⌐⌐            p.5

**Principal**
*Financial*
*Group*

**Principal Life
Insurance Company**
P.O. Box 14455
Des Moines, IA 50306-3455

| **Disability Insurance
Application – PART A**

Proposed Insured _Kevin W McBarron_____      Policy Number (if known) _____

---

## 3. Disability Income (Continued)

Owner (if other than Proposed Insured) – (Please list owner below and sign Part C.)

| Name | | | | | Address | |
| City | | | State | Zip | Owner Taxpayer ID Number | |

**Benefit Recipient (if other than Owner) for Disability Income Only**

| Name | | | Address | |
| City | | State | | Zip |

---

## 4. Premium Payer and Method of Payment

a.  Premium paid by:   ☒ Proposed Insured _100_ %      ~~By Employer~~  KM _____%

b.  If your employer pays any part of the premium, is it reportable by you as taxable income? ......... ☐ Yes    ☒ No

c.  Premium Mode:   ☒ Annual    ☐ Semi Annual*    ☐ Quarterly*    ☐ Monthly EFT*
    * There is an additional charge for premium payment frequencies other than annual.

---

## 5. Other Disability Insurance

Do you have, are you applying for, or will you become eligible for in the next three years (based on
a qualifying period of employment), any other Disability Insurance?........................................... ☐ Yes    ☒ No

If Yes, please list below any Disability Income (listing any Catastrophic or Lifetime Benefits separately), Group
Disability, Association, State Disability, Retirement/Pension, Overhead Expense, Disability Buy-Out, Key-person,
Salary Continuation or Short Term Contingency Disability Insurance. Also include any policies that include disability
benefits provided under Accident or Sickness Insurance, Pension, Retirement, Credit Insurance plans, or Loan
Protection coverage.

| Company | Policy No. | Type of Coverage | Benefit Amt. or % of Income | Elim. Period | Benefit Period | Ind. Pay (I) Emp. Pay (E) | | | Pending | | Replacing | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Yes | No | Yes | No |
| | | | | | | ☐ I | ☐ E | | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ I | ☐ E | | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ I | ☐ E | | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ I | ☐ E | | ☐ | ☐ | ☐ | ☐ |

**Replacement** By signing this application, I agree to terminate the insurance policy(s) that I indicated above as being
replaced within 60 days of the acceptance of this policy. I understand that if I do not cancel or lapse the insurance
policy(s), Principal Life Insurance Company has the right to rescind (terminate as if never issued) any policy issued as
a result of this application.

AA 1751-3      *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal*      Page 2

PRINCIPAL LIFE/McBARRON
000036

Mar 10 10 02:51p    Courtney                          123456...     p.6

| Principal *Financial* Group | **Principal Life Insurance Company** P.O. Box 14455 Des Moines, IA 50306-3455 | | **Disability Insurance Application – PART A** |

Proposed Insured  Kevin W McBarron _____    Policy Number (if known) _____

## 6. Financial

a. **Unearned Income** – Includes capital gains, interest, dividends, net rental income, pensions, annuities, and alimony. Is unearned income greater than 10% of earned income, or $30,000? ........................... ☐ Yes  ☒ No
   If Yes, itemize: _____

b. **Net Worth** – Is net worth, excluding primary residence, greater than $6,000,000? ...................... ☐ Yes  ☒ No
   If Yes, itemize: _____

| | Current Year 10 | Last Yr. 09 | 2 Yrs Ago 08 |
|---|---|---|---|
| **Tax Year:** | Current YTD Income | Income Last Yr. | Income 2 Yrs Ago |
| c. Earned Income – Income as shown on Federal Income Tax Return: | | | |
| c1. Owner or Nonowner Employee's salary & bonus, (FormW-2). (less business expenses reported on IRS Form 2106) | $ | $ | $ |
| c2. Owner-Employee's share of after-tax corp profits or losses (after expenses) (minimum 20% active owner, (Form 1120 or 1120S) | | | |
| c3. Sole Proprietor net income, after expenses (Form 1040, Schedule C) | | | |
| c4. Share of Partnership or LLC net income, after expenses (Schedule K-1 or Form 1040, Schedule E) | | | |
| c5. Pension plan or Profit-Sharing contributions made on your behalf, by a business you own | | | |
| c6. Total Earned Income: Sum of (c1) thru (c5) for each year | $ | | |

**If using Traditional application process, stop here and proceed to Part B (pages 4-7).**

## 7. Medical Question

a. Within the last five years, have you had, been treated for, or been diagnosed as having a heart condition, chest pain, stroke, back or neck problem, psychological condition (including, but not limited to, counseling from a mental health or substance abuse provider, and/or psychotherapy), cancer, diabetes, alcohol abuse, or drug dependency? ......................................................................................................................... ☐ Yes  ☒ No
   If Yes, provide details in the Comments below, including dates and healthcare provider's name and address.

b. Current Height _5'11"_ Weight _185_  Have you lost more than 10 lbs. in the last year? ......... ☐ Yes  ☒ No

Comments: _____

**If using Teleapp, proceed to Part C (page 8).**

AA 1751-3      *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*      Page 3

PRINCIPAL LIFE/MCBARRON
000037

1

| **Principal** Financial Group | **Principal Life Insurance Company** **Principal National Life Insurance Company** Members of Principal Financial Group® | P.O. Box 10431 Des Moines, IA  50306-0431 | **Insurance Application** |
|---|---|---|---|

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

Proposed Insured KEVIN W MCBARRON

D.O.B. 04 / 22 / 1960   Policy Number (If known) _____

## PART B
All references to "you" mean the Proposed Insured.

### ACTIVITIES/HEALTH HABITS

1. In the last five years have you, or do you have plans to:
   a. be a member of any armed forces or military unit? .......................................... ☐ Yes  ☒ No
   b. pilot any type of aircraft?........................................................................... ☐ Yes  ☒ No
   c. engage in scuba/skin diving, motor vehicle racing, skydiving or any other hazardous sporting activity? ................................................................................... ☐ Yes  ☒ No
   d. live outside the United States or Canada? (If yes, explain below) ......................... ☐ Yes  ☒ No
   e. travel outside the United States or Canada? (If yes, explain below) ...................... ☒ Yes  ☐ No

2. In the last five years have you:
   a. been in a motor vehicle accident, been charged with driving while intoxicated or had more than one moving violation? (If yes, explain below).................................... ☒ Yes  ☐ No
   b. been on parole or probation or charged with a felony or misdemeanor? (If yes, explain below) ............................................................................... ☐ Yes  ☒ No

3. In the last ten years have you used any tobacco or nicotine products? ...................... ☐ Yes  ☒ No
   **(Indicate date last used and amount per day)**

   a. ☐ cigarettes _____    d. ☐ pipe _____
   b. ☐ cigars _____    e. ☐ chewing tobacco/snuff _____
   c. ☐ nicotine patch/gum _____    f. ☐ other _____

4. In the last ten years have you consumed alcoholic beverages? ............................... ☒ Yes  ☐ No
   If yes, date last used? 2010 _____    Number of drinks per week: less than weekly

5. In the last ten years have you used cocaine, marijuana, methamphetamines, barbiturates or other controlled substances? ........................................................................ ☐ Yes  ☒ No

6. Have you ever been advised to limit or discontinue the use of alcohol or drugs; or sought or received treatment because of your alcohol or drug use?....................................... ☐ Yes  ☒ No

### DETAILS TO QUESTIONS 1-6

| Quest. # | Include dates and details as requested above. |
|---|---|
| 1C | Additional details: CERTIFIED AND HAVE NOT IN THE LAST FIVE YEARS AND HE DOES NOT HAVE ANY PLANS. |
| 1E | MEXICO; Was travel in past or future.: PAST; Purpose of travel: VACATION; Past travel details: 2007 FOR 1 WEEK ITALY; Was travel in past or future.: PAST; Purpose of travel: VACATION; Past travel details: 2009 FOR 10 DAYS FRANCE; Was travel in past or future.: PAST; Purpose of travel: VACATION; Past travel details: 2009 FOR 10 DAYS BAHAMAS; Was travel in past or future.: PAST; Purpose of travel: VACATION; Past travel details: 2009 FOR 1 WEEK |
| 2A | SPEEDING VIOLATION; Date of violation: 2008 SEE DETAILS AT END OF PART B... |

AA 1800N IN

This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.

Page 4

PRINCIPAL LIFE/McBARRON
000038

2

 **Principal**
Financial
Group

**Principal Life Insurance Company**
**Principal National Life Insurance Company**
Members of Principal Financial Group®

P.O. Box 10431
Des Moines, IA  50306-0431

| Insurance |
| Application |

Only one company is the issuer and responsible for obligations of any given
policy and is hereinafter referred to as "the Company".

Proposed Insured KEVIN W MCBARRON

D.O.B. 04 / 22 / 1960   Policy Number (If known) _____

PART B – (Continued)

**INCOME/OCCUPATION**
For Life, complete questions 7 and 8. For DI, complete questions 8-17. In all cases, Part B continues on
the next page.

7. Annual income from occupation $ N/A                    Other income $ N/A
   Source of other income N/A                   Net Worth (Assets – Liabilities) $ N/A

8. Primary occupation FINANCIAL PLANNER      Employer SELF PLANNERS INC.

9. Current Employment Information
   a. Type of business or industry FINANCIAL PLANNING
   b. Job title PRESIDENT
   c. What are your job activities and percentage of time spent in each?
      PHONES 100%

   d. How many hours do you usually work per week in your primary job? 50
   e. Total number of employees: Full-time 2        Part-time 0        Sub-contracted 0
   f. How many employees do you supervise? 2

10. How long have you been employed by your current employer? 29 years      (If less than three years,
    provide details below, e.g., employers, occupations and dates for last five years.)

11. Do you work out of your home? (If yes, how many hours per week? _____ )   ☐ Yes ☒ No

12. Do you have any other part-time or full-time jobs? (If yes, explain below) .......................   ☐ Yes ☒ No

13. Are you actively at work on a full-time basis without medical restriction?
    (If no, explain below) .....................................................................................................   ☒ Yes ☐ No

14. Do you intend to change jobs or employment in the next 6 months? (If yes,
    explain below) ................................................................................................................   ☐ Yes ☒ No

15. Have you ever requested or received any type of disability benefits (including workers'
    compensation and state disability) for an injury or illness? (If yes, explain below)............   ☐ Yes ☒ No

16. Do you have an ownership interest in any business you work for? ....................................   ☒ Yes ☐ No
    If yes, ownership percentage 100    length of ownership 29 YEARS
    Type of business: ☐ C Corporation     ☒ S Corporation          ☐ Partnership
                      ☐ Sole Proprietorship  ☐ Limited Liability Company  ☐ Other _____

17. Have you, or any business owned in whole or part by you, ever been in bankruptcy or
    any similar proceedings? (If yes, provide date discharged, type and chapter).................   ☐ Yes ☒ No

DETAILS TO QUESTIONS 7-17

| Quest. # | Include dates and details as requested above. |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

AA 1800N IN
This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.

Page 5

3

 **Principal Life Insurance Company** | P.O. Box 10431 | Insurance
**Principal National Life Insurance Company** | Des Moines, IA 50306-0431 | Application
Members of Principal Financial Group®

Only one company is the issuer and responsible for obligations of any given policy and is hereinafter referred to as "the Company".

Proposed Insured KEVIN W MCBARRON

D.O.B. 04 / 22 / 1960   Policy Number (if known) _____

**PART B – (Continued)**
MEDICAL HISTORY (Provide details to yes answers, questions 18-20 below)

18. In the last five years, have you had, been treated for or been diagnosed as having:
    a. high blood pressure, heart attack, chest pain, heart murmur, irregular heart beat, stroke, or any other disease or disorder of the heart or blood vessels?.........................
    b. cancer or a tumor, cyst or growth? ...............................................................................
    c. asthma, bronchitis, emphysema, tuberculosis or any other disease or disorder of the lungs or respiratory system?.....................................................................................
    d. seizure, paralysis, headaches, multiple sclerosis or any other disease or disorder of the brain or nervous system?.....................................................................................
    e. chronic fatigue, stress, depression, anxiety or any other emotional or psychological disorder? ....................................................................................................................
    f. hepatitis, colitis, ulcer, cirrhosis, irritable bowel or any other disease or disorder of the liver, gallbladder, pancreas or digestive tract? ....................................................
    g. diabetes, borderline diabetes, sugar in the urine, thyroid disorder or any other disease or disorder of the glandular system? ...............................................................
    h. kidney stones, nephritis, any blood or protein in the urine, sexually transmitted disease, prostate disorder, breast disorder or any other disease or disorder of the urinary or reproductive system?.....................................................................................
    i. back or neck pain, disc problems, spinal sprain or strain, sciatica, arthritis, carpal tunnel syndrome, or any other disease or disorder of the bones, joints, or muscles? ...
    j. any disease or disorder of the eyes, ears, nose, throat or skin? ....................................

19. (DI Only) Are you currently pregnant or have you had complications of pregnancy in the last five years? ..................................................................................................NA

20. In the last five years, have you had, been treated for or been diagnosed as having HIV (Human Immunodeficiency Virus) infection, positive HIV (Human Immunodeficiency Virus) test or AIDS (Acquired Immunodeficiency Syndrome)? ....................................

DETAILS TO QUESTIONS 18-20

| Quest. # | For yes answers, include dates, details, diagnosis, types and results of treatment, healthcare provider's full name and address. |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

PRINCIPAL LIFE/MCBARRON
000040

4

| Principal<br>Financial<br>Group | **Principal Life Insurance Company**<br>**Principal National Life Insurance Company**<br>Members of Principal Financial Group® | P.O. Box 10431<br>Des Moines, IA  50306-0431 | **Insurance**<br>**Application** |

Only one company is the issuer and responsible for obligations of any given
policy and is hereinafter referred to as "the Company".

Proposed Insured KEVIN W MCBARRON

D.O.B. 04 / 22 / 1980   Policy Number (if known) _____

**PART B** – (Continued)
MEDICAL HISTORY (Provide details to yes answers, questions 21-26 below)

21. Who is your Primary Physician?   ☒ None
    a. Name                                                       Phone Number

    Street                              City                  State     Zip

    b. Date last seen, reason and details

22. In the last five years:
    a. have you had any medical tests, hospitalization, illness or injury not provided in
       response to a previous question? (If yes, explain below).....................................
    b. have you consulted a doctor, chiropractor, psychiatrist, psychologist, counselor,
       therapist or other healthcare provider not provided in response to a previous
       question? (If yes, explain below)...................................................................

23. Are you taking or have you been advised to take any medication or treatment not
    provided in response to a previous question? (If yes, explain below) ...............................

24. Current Ht 5 ft 11 in  Wt 180 lb   Have you lost more than 10 lbs. in the last year?
    If yes, _____ lbs./kgs. indicate reason _____

25. a. Has either of your natural parents lived to at least age 60? ..........................................
    b. Do any of your natural parents or siblings have a history of diabetes, cancer, stroke
       or heart disease? .........................................................................................................
       If yes, provide details (i.e., relationship, type of disease, age diagnosed, current age or age at death):

26. Have you ever had any life, health or disability insurance rated, ridered or declined?          ☐ Yes  ☒ No
    (if yes, explain below)......................................................................................................

DETAILS TO QUESTIONS 21-26

| Quest. # | Include dates and details as requested above. |
|----------|-----------------------------------------------|
| 25B      |                                               |

AA 1800N IN

Page 7
This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.

PRINCIPAL LIFE/MCBARRON
000041

5

 **Principal Life Insurance Company** | P.O. Box 10431 | **Insurance**
**Principal National Life Insurance Company** | Des Moines, IA 50306-0431 | **Application**
Members of Principal Financial Group®

Only one company is the issuer and responsible for obligations of any given
policy and is hereinafter referred to as "the Company".

Proposed Insured KEVIN W MCBARRON

D.O.B. 04 / 22 / 1960   Policy Number (if known) _____

| Quest. # | Include dates and details as requested. |
|---|---|
| 2A | SPEEDING VIOLATION; Date of violation: 2008 |
| 2A | SPEEDING VIOLATION; Date of violation: 2008 |
| 2A | License been suspended in the last five years.: NO |
| 4 | Additional details: HE HAS MAYBE FIVE DRINKS PER MONTH. |

AA 1800N IN

Page 7a

PRINCIPAL LIFE/MCBARRON
000042

2

 **Principal**
*Financial Group*

**Principal Life
Insurance Company**
P.O. Box 14455
Des Moines, IA 50306-3455

| Disability Insurance
Application – PART C

Proposed Insured <u>Kevin W McBarron</u>

**Agreement/Authorization to Obtain and Disclose Information.**

("Company" means Principal Life Insurance Company)

**AGREEMENT: Statements in Application(s):** I represent that all statements in this application(s) are true and complete and were correctly recorded before I signed my name below. I understand and agree that the statements in this application(s), including all of its parts, and statements by the Proposed Insured in any medical questionnaire(s) that becomes a part of this application(s), will be the basis of any insurance issued. I understand that misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

When Insurance Effective: I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application(s) has been received and accepted by the owner and the first premium paid; and (2) at the time of such receipt and payment, the person to be insured is actually in the state of health and insurability represented in this application(s), medical questionnaire(s), or amendment(s) that becomes a part of this application(s); and (3) the Part D of the completed Tele-App Interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy.

Limitation of Authority: I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on this application(s) and on any medical questionnaire(s) that becomes a part of this application(s) may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in the application(s).

---

☒ This application(s) is Cash on Delivery (C.O.D.); and no Conditional Receipt coverage is provided, or
☒ I have paid $ _3053 ⁵⁵_ for Disability Income/$ _____ for Overhead Expense/$ _____ for Disability Buy-Out/$ _____ for Key Person Replacement insurance which is no less than one month's advance premium. If money was paid, I have been given the Conditional Receipt. In return I have read, understand, and agree to its terms, or

If preapproved by Principal Life Insurance Company
☐ I have signed, dated and submitted to the Company one of the three documents listed below in this box. I have been given the Conditional Receipt. In return I have read, understand, and agree to its terms.
   • Payroll Deduction Authorization Form
   • Employer Pay Form
   • Other form acceptable to the Company

---

(continued on next page)

AA 1751-3        *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*        Page 8

PRINCIPAL LIFE/MCBARRON
000043

Mar 10 10 02:51p      Courtney                                    123456,ɔɔ              p.8



**Principal Life
Insurance Company**
P.O. Box 14455
Des Moines, IA 50306-3455

| **Disability Insurance
Application – PART C**

Proposed Insured  Kevin W McBarron

(continued from previous page)

### Agreement/Authorization to Obtain and Disclose Information

**AUTHORIZATION:** I authorize any insurance (or reinsuring) company, consumer reporting agency, governmental agency, insurance agent, broker, licensed representative, or any other organization, institution, or person having personal information (including physical, mental, drug, or alcohol use history) regarding the named Proposed Insured to provide to the Company, its representatives, or reinsurers, any such data. I authorize the Company to conduct a telephone interview in connection with my application(s) for insurance.

I authorize the Medical Information Bureau, Inc. (MIB, Inc.) to furnish data to the Company or its reinsurers. I authorize Principal Life to release any such data to MIB, Inc. or as required by law. Notwithstanding any other provision in this form, the authorization to release data to the MIB, Inc. shall survive the termination of this form to the extent necessary to confirm, correct, or update previously supplied data to the MIB, Inc. Data released may include results of my medical examination or tests requested by the Company. I understand that the data obtained by use of this authorization will be used by the Company to determine eligibility for insurance.

I have received a copy of the "Notice of Insurance Information Practices," which includes notice required by any Fair Credit Reporting Act. It also describes MIB, Inc. I agree that this authorization shall be valid for 24 months from the earlier of: (1) the date of this application(s), or (2) the date of my policy. I may revoke this authorization for information not then obtained. Such revocation must be in writing. It will not be effective until received at the Company's Home Office. I agree that a photocopy of this authorization is as valid as the original. I have received a copy of this authorization.

**Warning:** It is a crime to provide false, misleading, or incomplete information to an insurance company for the purpose of defrauding the company or any other person. Penalties include imprisonment and/or fines and denial of insurance benefits.

### SIGNATURES (Please do not print name below. Signatures, City, State and Date are required.)

| Proposed Insured | Signed at: City | State | Date |
|---|---|---|---|
| X _McBarron_ | Fishers | IN | 3 / 15 / 10 |
| Disability Income; Owner (if other than Proposed Insured) | Title (if Corporation, Officer other than Proposed Insured) | | Date / / |
| X | | | |
| Overhead Expense; Owner (if other than Proposed Insured) | Title (if Corporation, Officer other than Proposed Insured) | | Date / / |
| X | | | |
| Disability Buy-Out; Owner | Title (if Corporation, Officer other than Proposed Insured) | | Date / / |
| X | | | |
| Key Person Replacement; Owner | Title (Officer other than Proposed Insured) | | Date / / |
| X | | | |
| Agent/Broker/Licensed Representative | License Number  36444 | | Date 3 / 15 / 10 |
| X | | | |
| Co-signature by Resident Licensed Rep. (if applicable in your state) | License Number | | Date / / |
| X | | | |

AA 1751-3     *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*          Page 9

Principal Life
Insurance Company
Des Moines, Iowa 50392-0001

Disability Insurance
Application — PART D

Proposed Insured  Kevin W McBarron

D.O.B. 04 / 72 / 1980      Policy Number 7725110

**PART D — Agreement/Acknowledgement of Delivery ("Company" means Principal Life Insurance Company)**

Agreement:

[form body text, partially illegible]

Acknowledgement of Delivery:

I acknowledge that policy numbered 7725110 _____ was delivered to me today and is based on the life of Kevin W McBarron.

Insurability Delay:

[form body text, partially illegible]

| | | | |
|---|---|---|---|
| Signature of Proposed Insured | Signature of Company Officer other than Proposed Insured | | 07/01/10 |
| | | | Date |

SIGNATURES (Persons who sign and complete below: Signatures, City, State and Date are required.)

AA 11950-1      Last Page